Adolph Tode et al., Respondents, *v.* Lena Gross, Appellant.

Defendant, who was the owner of a cheese factory and was engaged in manufacturing several varieties of cheese by a secret process known only to her and her agents, entered into an agreement with plaintiffs to sell them her factory and its belongings, together with "the good will, custom, trade-marks and names used in and belonging to said business;" she also covenanted to communicate to them the secret of the manufacture, and that she and said agents would refrain from communicating said secret to anyone else, and after a certain date refrain from making, manufacturing or vending said cheese and from using the trade-marks or name "under the penalty of $5,000," which was "named as stipulated damages," to be paid by defendant in case of a violation of this covenant within five years. Subsequent to the date on which defendant agreed to refrain from manufacturing and selling, and within five years from the date of the contract, two of her said agents sold cheese having the same name and substantially the same trade-marks as that sold by defendant to plaintiffs, which was not manufactured by them, but was a similar product to that formerly so manufactured. In an action for an alleged breach of said covenant, *held*, that it was not opposed to public policy as in restraint of trade; that it was not confined to defendant's personal acts, but covered as well those of her agents; and that, as the actual damages for a breach of the covenant would be wholly uncertain and incapable of being ascertained except by conjecture, it was the intent of the parties to liquidate them when they named $5,000 "as stipulated damages," and plaintiffs were entitled to recover that amount; that the use of the word "penalty" was not, under the circumstances, controlling.

(Argued June 12, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 11, 1889, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial without a jury.

This was an action to recover the sum of $5,000 as stipulated damages for breach of covenant

On the 15th of October, 1884, the defendant owned a cheese factory situate in the town of Monroe, Orange county, comprising two parcels of land with the buildings thereon and a quantity of fixtures, machinery and tools connected therewith. For some time prior, with the assistance of her husband, Conrad Gross, her brother-in-law, August Gross, and her father, John Hoffman, she had been engaged in the business of manufacturing cheeses at said factory known as Fromage de Brie, Fromage d'Isigny and Neufchatel. Such cheeses were made by a secret process, known only to herself and her said agents. On the day last named, she entered into a sealed agreement with the plaintiffs whereby she agreed to sell and transfer to them the said factory and all its belongings, together with the " good will, custom, trade-marks and names used in and belonging to the said business," for the sum of $25,000, to be paid and secured March 1, 1885, when possession was to be given. Said instrument contained a covenant on her part that she would " communicate after the first day of March, 1885, or cause to be communicated to " said plaintiffs " by Conrad Gross, John Hoffman and August Gross, or one or other of them, the secret of the manufacture of the cheeses known as Fromage de Brie, Neufchatel and d'Isigny, and the recipe therefor and for each of them, and will instruct, or cause to be instructed, them and each of them in the manufacture thereof. And that she and the said Conrad Gross, John Hoffman and August Gross will refrain from communicating the secret recipe and instructions for the manufacture of said cheeses, or either of them, to any and all persons other than the above-named parties of the second part (plaintiffs), and will also, after the first day of April, 1885, refrain from engaging in the

business of making, manufacturing or vending of said cheeses, or either of them, and from the use of the trade-marks or names, or either of them, hereby agreed to be transferred in connection with said cheeses, or either of them, or with any similar product, under the penalty of five thousand dollars, which is hereby named as stipulated damages, to be paid by the party of the first part (defendant), or her heirs, executors, administrators or assigns, in case of a violation by the party of the first part (defendant), of this covenant, of this contract, or any part thereof, within five years from the date hereof."

She further covenanted that she, herself, as well as " said Conrad Gross, John Hoffman and August Gross, during and up to and until the first day of May, 1885, shall continue and remain in said county of Orange and from time to time and at all reasonable times during said period, by herself, or by said Conrad Gross, John Hoffman and August Gross, whenever so requested by the said parties of the second part (plaintiffs), impart to them or either of them, the secret of making such cheeses and each of them, and instruct them and each of them in the process of manufacturing the same and each of them as fully as she or the said Conrad Gross, John Hoffman or August Gross, or either of them, are informed concerning the same."

Both parties appear to have duly kept and performed the agreement except that, as the trial court found " subsequently to the first day of May, 1885, Conrad Gross, the husband of defendant, went to New York city and engaged in the business of selling 'foreign and domestic fruits and all kinds of cheese and sausages, etc.,' * * * and while so engaged * * * sold and personally delivered from his place of business to one John Wassung three boxes of cheese marked and named Fromage d'Isigny, and having substantially the same trade-marks thereon as that sold by defendant to plaintiffs, and having stamped thereon the name Fromage d'Isigny and that said cheese so sold by him to said Wassung was a similar product to that formerly manufactured by defendant."

Also that " said August Gross, the brother-in-law of defend-

ant, subsequent to the first day of May, 1885, engaged in the business of retailing fancy groceries in the city of New York and in and during the fall of 1887 and prior to the commencement of this action, kept for sale at his place of business in New York city, boxes of cheese marked or stamped Fromage d'Isigny."

The court further found that the cheese so sold by Conrad Gross under the name of Fromage d'Isigny, "was never sold by plaintiffs, nor made or manufactured by them, or either of them, but that the same was a similar product."

The court found as conclusions of law that said agreement was a reasonable one and was founded upon a good and sufficient consideration; that said sale by Conrad and said keeping for sale by August Gross was a direct violation of the covenant in question; that the restriction imposed was no more than the interests of the parties required and that it was not in restraint of trade or against public policy.

Judgment was ordered for the plaintiffs for the sum of $5,000, as stipulated damages.

*John Fennell* for appellant.      There was no proof of a violation by the defendant; there was proof of a violation by the other persons, but without the knowledge or consent of the defendant, and thus the trial court found. (*Leggett* v. *M. L. Ins. Co.*, 53 N. Y. 398; *Hoag* v. *McGinnis*, 22 Wend. 163; *Bagley* v. *Peddie*, 16 N. Y. 471.)      The contract is in restraint of trade.      The territory and the time is unlimited, and the contract is, therefore, void.   (106 N. Y. 473.)   No damages have been proven, except nominal damages.   (*Bagley* v. *Peddie*, 16 N. Y. 471; *Kent* v. *K. Ins. Co.*, 69 id. 58; *Beers* v. *Shannon*, 73 id. 303; 1 Sugd. on Damages, 478, 527; *Bosye* v. *Ambrose*, 38 Mo. 39; *Jaqueth* v. *Hudson*, 5 Mich. 123; *Beale* v. *Hayes*, 5 Sandf. 640; *Colwell* v. *Lawrence*, 38 N. Y. 75.)   Defendant appellant was relieved from the agreement by the acts of the plaintiffs in inducing a violation at the hands of the two persons (other than defendant) of the covenant sued on, and in changing the position of the

parties so as to increase the risk or liability of the appellant. (*Roehner* v. *K. L. Ins. Co.*, 63 N. Y. 166 ; *Miller* v. *Stewart*, 9 Wheat. 703 ; *Ryan* v. *Trustees, etc.*, 14 Ill. 24 ; *Mayhew* v. *Boyd*, 4 Md. 110 ; *A. N. Bank* v. *Douglass*, 51 Ga. 209.) The respondents waived the covenants by their own acts. (2 Pars. on Cont. chap. 2, § 3.)

*Henry Bacon* for respondents. The covenant in question is not void as being in restraint of trade. (*L. C. Co.* v. *Lorsont*, L. R. [9 Eq. Cas.] 345 ; *Hitchcock* v. *Coker*, 6 Ad. & El. 438 ; *Roussillon* v. *Roussillon*, 42 L. T. [N. S.] 679 ; *Davies* v. *Davies*, 58 L. T. [N. S.] 209 ; 37 Alb. L. J. 408.) (*Vickey* v. *Welsh*, 19 Pick. 523 ; *Taylor* v. *Blanchard*, 13 Allen, 373 ; *Peabody* v. *Norfolk*, 98 Mass. 452 ; *Morse Co.* v. *Morse*, 103 id. 173 ; *Jarvis* v. *Peck*, 10 Paige, 118 ; *Howard* v. *Sealey*, 47 Barb. 428 ; *D. M. Co.* v. *Roeber*, 106 N. Y. 433 ; *Hodge* v. *Sloan*, 107 id. 244 ; *Leslie* v. *Lorillard*, 110 id. 533 ; *W. T. Co.* v. *Pool*, 51 Hun, 157 ; 2 Story's Eq. Juris. § 950.) The defendant cannot escape her liability upon this covenant upon the ground of her coverture. (*Barton* v. *Beer*, 35 Barb. 78 ; *Owen* v. *Cawley*, 36 N . Y. 600 ; *Ballou* v. *Dilaye*, 37 id. 35 ; *Frecking* v. *Rolland*, 53 id. 422 ; *Linderman* v. *Farquharson*, 101 id. 434 ; Laws of 1884, chap. 381 ; *Shubrick* v. *Salmond*, 3 Burr. 1637 ; *Hadley* v. *Clark*, 9 T. R. 259 ; *Hand* v. *Baynes*, 4 Whart. 204 ; *Trenton* v. *Bennet*, 3 Dutch. 514 ; *School District* v. *Dauchy*, 25 Conn. 530 ; *Beebe* v. *Johnson*, 19 Wend. 500 ; *Parr* v. *Greenbush*, 42 Hun, 232 ; *Harmony* v. *Bingham*, 12 N. Y. 96 ; *Tompkins* v. *Dudley*, 25 id. 272.) Plaintiff was entitled to recover $5,000 as liquidated and stipulated damages. (*Price* v. *Green*, 16 M. & W. 346 ; *Dakin* v. *Williams*, 17 Wend. 447 ; *Knapp* v. *Maltby*, 13 id. 587 ; *Bagley* v. *Peddie*, 16 N. Y. 469 ; *Wooster* v. *Kisch*, 26 Hun, 61.)

VANN, J. The business carried on by the defendant was founded on a secret process known only to herself and her agents. She had the right to continue the business, and, by

keeping her secret, to enjoy its benefits to any practicable
extent.    She also had the right to sell the business, including
as an essential part thereof the secret process, and, in order to
place the purchasers in the same position that she occupied, to
promise to divulge the secret to them alone and to keep it
from everyone else.    In no other way could she sell what she
had and get what it was worth.    Having the right to make
this promise, she also had the right to make it good to her
vendees and to protect them by covenants with proper safe-
guards against the consequences of any violation.    Such a
contract simply left matters substantially as they were before
the sale, except that the seller of the secret had agreed that
she would not destroy its value after she had received full
value for it.    The covenant was not in general restraint of
trade, but was a reasonable measure of mutual protection to
the parties, as it enabled the one to sell at the highest price
and the other to get what they paid for.    It imposed no
restriction upon either that was not beneficial to the other by
enhancing the price to the seller or protecting the purchaser.
Recent cases make it very clear that such an agreement is not
opposed to public policy, even if the restriction was unlimited
as to both time and territory.    (*Diamond Match Co.* v.
*Roeber*, 106 N. Y. 473; *Hodge* v. *Sloan*, 107 id. 244; *Leslie*
v. *Lorillard*, 110 id. 519, 534; *Watertown Thermometer Co.*
v. *Pool*, 51 Hun, 157.)    The restriction under consideration,
however, was not unlimited as to time.

The chief reliance of the defendant in this court, where the
point seems to have been raised for the first time, is that the
covenant, so far as stipulated damages are concerned, is con-
fined to the personal acts of Mrs. Gross, and does not embrace
the acts of her agents.    A careful reading of the agreement,
however, in the light of the circumstances surrounding the
parties when it was made, shows that no such result was
intended.    What was the object of the covenant?    It was to
keep secret at all hazards the process upon which the success
of the business depended.    On no other basis could the plain-
tiffs safely buy or the defendant sell for what her property was

worth.    Who had the power to keep the process secret?
Clearly the defendant, if anyone, as she had confided it to no
one except her trusted agents, who were nearly related to her
by blood or marriage.    But could she covenant against the
acts of those over whom she had no control?    She had the
right to so covenant by assuming the risk of their actions, and
unless she had done so, presumptively, she could not have sold
her factory for so large a sum.    It was safer for her to sell
with such a covenant than it was for the plaintiffs to buy with-
out it.    She could exercise some power over her own husband
and her father and her husband's brother, all of whom had
been associated with her in carrying on the business, and
whose actions in certain other respects she assumed to control
for a limited time, whereas the plaintiffs were powerless unless
they had her promise to keep the process secret at the peril of
paying heavily if she did not.    It is not surprising, therefore,
to find that the restrictive part of the covenant applies with
the same force to her agents that it does to herself, for she
undertakes that neither she nor they will disclose the secret or
engage in making or selling either kind of cheese, or use the
trade-marks or names connected with the business.    We do
not think that a personal act of the defendant is essential to a
violation of this covenant by her, for if she permits, or even
does not prevent her agents from doing the prohibited acts,
the promise is broken.    While it is her exclusive covenant, it
relates to the action of others, and if they do what she agreed
that they would not do, it is a breach by her, although not her
own act.    She violated her agreement, not by selling herself,
but by not preventing others from selling.    This construction
of the restrictive part of the covenant would hardly be open
to question were it not that in the same sentence occurs the
reparative or compensatory part designed to make the plain-
tiffs whole, if the defendant either could not or did not keep
her agreement.    While this provides that any violation
involves the penalty of $5,000, it adds, " which sum is hereby
named as stipulated damages to be paid " by the defendant in
case of a violation by her of the covenant in question.    What

kind of violation is thus referred to? The defendant says a personal violation by her only, but we think, for the reasons already given, that the spirit of the agreement includes both a violation by her own act, and by the act of those whom she did not prevent from selling, although she had agreed that they would not sell. As no one not a party to a contract can violate it, every act of defendant's former agents contrary to her covenant was a violation thereof by her, whether she knew of it or assented to it or not. Whenever that was done which she agreed should not be done, it was a breach of a covenant by her, even if the act was contrary to her wishes and in spite of her efforts to prevent it. Her covenant was against a certain act by any one of four persons, including herself. Two of those persons separately did the act which she had agreed that neither of them should do, and thus there was a violation of the covenant by her the same as if she had done the act in person.

The argument of the learned counsel for the defendant that the contract fixed a sum to be paid in case of a violation by the defendant, but not in case of a violation "by the other parties," while plausible, is unsound, for there were no " other parties" who could break the covenant. She was the sole covenantor, and unless she kept the covenant she broke it, and she did not keep it.

As the actual damages for a breach of the covenant would necessarily be " wholly uncertain and incapable of being ascertained, except by conjecture," we think that the parties intended to liquidate them when they provided that the sum named should be " as stipulated damages." The use of the word penalty under the circumstances is not controlling. (*Bagley* v. *Peddie*, 16 N. Y. 469; *Dakin* v. *Williams*, 17 Wend. 448; affirming 22 id. 201; *Wooster* v. *Kisch*, 26 Hun, 61.)

As there is no other question that requires discussion, the judgment should be affirmed, with costs.

All concur, except BROWN, J., not sitting.

Judgment affirmed.