HARVEY WOOD, Respondent, *v.* WHITEHEAD BROTHERS COMPANY, Appellant.

1. CONTRACT — CONSIDERATION. An oral contract to pay a certain sum per month to plaintiff, who agreed to discontinue dealing in moulding sand obtained within the county except as agent for the defendant, is not without consideration because the plaintiff had previously executed a writing, which acknowledged the receipt by him of a specified sum as payment in full of all demands, and contained an agreement, in consideration of a monthly compensation, to render to defendant, if required, future services in selling moulding sand, and not to allow any other person to use his name in the purchase or sale thereof; inasmuch as plaintiff's agreement did not compel him to cease dealing in sand for his own account, but the oral contract did, so far as the sand specified therein is concerned, thus making the two agreements essentially different; especially in a case where there is evidence that the former contract was treated by the parties as at an end.

2. WHEN CONTRACT NOT IN RESTRAINT OF TRADE. Where a person, who is engaged in the business of buying and selling a commodity, but with neither a business plant nor stock, enters into a contract with a corporation of which he is presumably a business rival, whereby he agrees for a certain compensation to discontinue his business and to turn over to it all orders which he then had or might thereafter receive for the com-

69

modity in question, the effect is to transfer to the corporation the good will or custom of the business which he had built up, and to cease to be its competitor to the extent described, and the contract cannot be regarded as in restraint of trade and, therefore, void as against public policy.

*Wood* v. *Whitehead Brothers Co.*, 37 App. Div. 625, affirmed.

(Argued December 21, 1900; decided February 5, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 17, 1899, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

This action was brought to recover a sum claimed to be due to the plaintiff under a contract, made orally, with the defendant, in May, 1895; by the terms of which the latter had agreed to pay to the former thirty dollars each month, while he lived and while it remained a corporation, in consideration of his agreement to give up the business of dealing in moulding sand obtained from sand banks in the county of Albany, and not to engage further in it, personally, or as agent for any other than the defendant. Both parties were, and had been for some years before, engaged in the business of dealing in moulding sand. The thirty dollars were paid monthly to the plaintiff until the end of the succeeding year, when further payments were refused and, subsequently, the present action was brought to recover the amount remaining unpaid at the time of the bringing thereof. Prior to the making of the contract, and in the month of April, 1893, the plaintiff had executed and delivered to the defendant a writing, of which the following is a copy:

"ALBANY, N. Y., *April* 15, 1893.

"Received this day of Whitehead Bros. Company the sum of two hundred and fifty dollars, the receipt of which is hereby acknowledged, the same being payment in full for all debts, dues, demands, services and all or any obligations whatsoever, and I hereby agree to render to said company my services in selling moulding sand for them and in any other

way or manner they may require, and I further agree not to allow any other person to use my name in the purchase of, or the sale of moulding sand from this date on. I hereby agree to accept from this date from the said Whitehead Bros. Co., in full compensation for the services as described above, the sum of fifteen dollars per month, the same to terminate whenever said company give me thirty days notice that they no longer require my services.

"(Signed)    HARVEY WOOD.

"Witness, P. J. Rorabeck."

Thereafter the defendant paid to the plaintiff fifteen dollars a month, until about two months before May, 1895; the time when the contract now sued upon was made. The trial judge, before whom the trial was had without a jury, made findings of fact, which included the facts stated, and he found, further, that when the defendant ceased paying the fifteen dollars a month, under the agreement of 1893, it had not required of the plaintiff any services whatever, nor did the plaintiff tender any services, or demand any payment under that agreement, and that both parties had treated the same as at an end; although no notice as provided in the writing was ever given. As conclusions of law, he found that the agreement of 1893 was not supported by mutual promises, but, if valid and enforceable because acted upon, it was abandoned by both parties; that there was a sufficient consideration for the contract of May, 1895; that that agreement was not void as being in restraint of trade and that the plaintiff was entitled to recover. The plaintiff's judgment was affirmed at the Appellate Division, in the third department, and the defendant appealed to this court.

*Edgar T. Brackett* for appellant. The agreement of May, 1895, upon which this action is brought, is wholly without any consideration, and is, therefore, without any force as against the defendant, for the reason that at the time said agreement was made, there was in force a valid and enforceable contract

between the parties, made April 15, 1893, which required the plaintiff to do every act and thing required of him by the contract of 1895. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 562; *Wahl* v. *Barnum*, 116 N. Y. 87; *Robinson* v. *Jewett*, 116 N. Y. 40.) The contract upon which the suit was brought, made in May, 1895, was, and is, void as against public policy, and is in restraint of trade. (*D. M. Co.* v. *Roeber*, 106 N. Y. 473; *U. S. C. Co.* v. *W. S. R. Co.*, 90 Hun, 429; *Ru Ton* v. *Everitt*, 35 App. Div. 412; *Francisco* v. *Smith*, 143 N. Y. 488; *Greenfield* v. *Gilman*, 140 N. Y. 168; *Kidd* v. *Johnson*, 100 U. S. 617; *United States* v. *T. M. F. Assn.*, 166 U. S. 290; *N. W. P. Co.* v. *Hobbs*, 90 Hun, 288; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Hodge* v. *Sloan*, 107 N. Y. 244.)

*Harold D. Alexander* for respondent. Defendant's promise to pay was based on an ample consideration. (*Greenfield* v. *Gilman*, 140 N. Y. 168.) This contract, although in restraint of trade, was among the class universally recognized as enforceable. (*D. M. Co.* v. *Roeber*, 106 N. Y. 473; *W. T. Co.* v. *Pool*, 51 Hun, 157; *U. S. C. Co.* v. *W. S. R. Co.*, 90 Hun, 429; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Ward* v. *Hogan*, 11 Abb. [N. C.] 478; *N. W. P. & Co.* v. *Hobbs*, 90 Hun, 288; Patterson on Restr. Trade, 5; 2 Beach on Cont. 2036, 2063; *Nester* v. *Co.*, 161 Penn. St. 473; Bishop on Cont. 50; *Gibbs* v. *C. Gas Co.*, 130 U. S. 396; *P. Co.* v. *Sampson*, L. R. [19 Eq.] 462.) Plaintiff's agreement not to deal in sand was combined with a sale of the good will of his business. (*Brett* v. *Ebel*, 29 App. Div. 256; Patterson on Restr. Trade, 52; *Leslie* v. *Lorillard*, 110 N. Y. 519.)

GRAY, J. The appellant has raised two questions with respect to the validity of the contract sued upon. In the first place, it is contended that it was wholly without any consideration; for the reason that, when it was made, there was in force a prior contract, made in 1893, which required the plaintiff to do every act and thing required of him by the contract of

1895; invoking a familiar principle in the law of contracts. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392, 401.) I think that there are two answers to this. The writing of 1893 was of a twofold nature. It was, in part, an acknowledgment by the plaintiff of the receipt of the sum of $250, as payment in full for all debts, services, demands, etc., and it was, in part, an agreement by the plaintiff to render to the defendant his "services in selling moulding sand for them" and "not to allow any other person to use his name in the purchase, or the sale, of moulding sand." The payment of $250 would not appear to be the consideration for the agreement by the plaintiff to render future services, but, rather, to be, simply, the receipt, or acknowledgment of payment, of something which was then due the plaintiff. The further statement as to compensation for those services confirms this interpretation, and it is, in fact, borne out by the plaintiff's evidence that the $250 was paid him, at the time, on an old contract. But, if we could assume that it was the consideration for the plaintiff's agreement to render the future services, still, I think it is clear that that agreement was essentially other than the contract which the parties made in 1895. The plaintiff, by his agreement of 1893, was to serve the defendant in selling moulding sand for it and in any other way it might require. He agreed to become its agent and his agreement did not compel him to cease dealing in the sand, for his own account. But, by the subsequent contract of 1895, such an obligation, to cease the business of dealing in Albany moulding sand, was imposed upon, and assumed by, him. Then, further, I do not think that the finding of fact, that the agreement of 1893 was treated by the parties as at an end, is without support in the evidence. The trial judge could reasonably infer from the facts testified to, that the defendant had stopped paying to the plaintiff the fifteen dollars a month, for some two months before the agreement of 1895, and that the plaintiff, thereupon, had resumed his dealings in sand until the contract of 1895 was made, that the parties regarded their arrangement as terminated and had abandoned it.

I think, therefore, that the contract of 1895, which is found to have been made by the parties and carried into execution, was valid and enforceable; unless, as it is, in the second place, contended by the appellant, it was against public policy, as being in restraint of trade, and, therefore, void. The argument, in that respect, seems to be that the contract was the plaintiff's covenant not to do business in moulding sand anywhere and was not connected with a transfer of anything in the way of a business, or a plant. As to the plaintiff's agreement, the appellant is incorrect as to the general nature of its restraint upon the plaintiff. The finding is, and the evidence supports it, that the plaintiff's agreement related only to the purchase and sale of Albany moulding sand; that is, moulding sand from the county of Albany. However, I should not regard it as of any controlling importance, if it were as broad as the appellant claims. The feature, which is said to distinguish this case from our prior decisions upon the subject, is that the plaintiff's agreement was unaccompanied by the sale of any business plant, or stock. At the time of contracting with the defendant, he had neither. He was engaged in the business of buying and selling Albany mould-ing sand and was, presumably, a business rival of the defend-ant. By this contract, he agreed to discontinue his business and to turn over to the defendant all orders for sand, which he then had, or might thereafter receive. The effect of the arrangement was to transfer to the defendant the good will, or custom, of the business which he had built up, and to cease to be its competitor to the extent described. That a man may not contract, as he will, with respect to himself, or to his property rights, demands the intervening of some authorita-tive reason, founded in considerations of public policy. The denial of the right can only be reasonable, when to permit its exercise is seen to be fraught with consequences injurious to the interests of society. The state has a right to limit indi-vidual rights, when their exercise touches the public inter-ests and, if unrestrained, would be prejudicial to order, or to progress. The doctrine, which avoids a contract for being

one in restraint of trade, is founded upon a public policy. It had its origin at a time when the field of human enterprise was limited and when each man's industrial activity was, more or less, necessary to the material well-being and welfare of his community and of the state. A discussion of the doctrine and the history of the law appear in the cases of *Diamond Match Company* v. *Roeber*, (106 N. Y. 473) and of *Leslie* v. *Lorillard*, (110 N. Y. 519). The conditions, which made so rigid a doctrine reasonable, no longer exist. In the present practically unlimited field of human enterprise, there is no good reason for restricting the freedom to contract, or for fearing injury to the public from contracts which prevent a person from carrying on a particular business. Interference would only be justifiable when it was demonstrable that, in some way, the public interests were endangered. But contracts between parties, which have for their object the removal of a rival and competitor in a business, are not to be regarded as contracts in restraint of trade. They do not close the field of competition, except to the particular party to be affected. To say, at the present day, that such a contract as was made in this case was affected by a public interest and was a matter of public concern would be, in my opinion, unreasonable. Such a contract not only does not obstruct trade; but it may be for the advantage of the public as well as of the individual. (Story on Contracts, § 551.) Heretofore, in most of the cases which have come before the courts, the covenant to refrain from a calling within a territory described accompanied a sale of the business itself, with all its appliances or appurtenances. For obvious reasons, that would be so; but, if the calling be one which is followed without a business plant, is any principle of public policy the more violated by a covenant to discontinue it? Clearly not and this court has not held to that effect. Indeed, its utterances have intimated to the contrary. *Leslie* v. *Lorillard*, (*supra*), is much in point; where the contract was that a steamship company would, in consideration of monthly payments, discontinue its business of running vessels

between certain ports. The contract was not considered to be objectionable. Quite recently, it was said by Judge LANDON, speaking for this court, in the case of *Cummings* v. *Union Blue Stone Co.* (164 N. Y. 401), that "it may be conceded that the law, as now understood, restrains no one from selling his property, nor does it compel any one to continue a business which he can sell, or finds it to his interest to abandon ; much less to continue it for any time, or in any particular manner or place." The *Diamond Match* case, the *Leslie* case and the case of *Tode* v. *Gross* (127 N. Y. 480), were cited and relied upon. In *Brett* v. *Ebel*, (29 App. Div. 256), Mr. Justice BARRETT considered a similar question and it was there held that the contract in question, which involved only the sale of the good will of the particular business, was not within the application of the doctrine. The plaintiff exercised his right to agree to go out of the business, for an advantage deemed to be gained by him in so agreeing, and he, also, agreed to turn over to the defendant his good will and custom. I think the contract did not come within the condemnation of the law.

The case of *Francisco* v. *Smith*, (143 N. Y. 488), is not at all opposed to this view. It was stated in the opinion, what is an evident fact, that an agreement not to engage in a particular business is a valuable right, in connection with the business it was designed to protect, and that if the business had not been disposed of there would have been nothing for the agreement to operate upon. In that case, the covenant accompanied the transfer of the business and the vendee was held capable of further assigning the covenant, in connection with his sale of the business, to another.

I think the judgment should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, CULLEN and WERNER, JJ., concur ; HAIGHT, J., absent ; LANDON, J., not sitting.

Judgment affirmed.