New York Bank Note Company, Respondent and Appellant, *v.* The Hamilton Bank Note Engraving and Printing Company and The Kidder Press Manufacturing Company, Appellants and Respondents.

1. Appeal — Appellate Division Has No Power to Reverse a Finding of Fact and Modify Judgment. While the Appellate Division has power, upon an appeal from an interlocutory judgment, to reverse a finding of fact and order a new trial, it has no authority to make a finding of fact contrary to that of the trial court and modify an interlocutory judgment in accordance therewith, and the judgment so entered must be reversed and a new trial granted.

2. Contract — Agreement Not to Sell Printing Presses of a Certain Kind Except to One Party — When Contract Not Assignable. Where a corporation engaged in manufacturing presses for printing, numbering and perforating strip tickets entered into a contract with a printing company, incorporated under the laws of the state of New Jersey, by which all future sales of the presses should be made to and through the latter company, which should have the right to lease the presses to purchasers thereof under a perpetual lease, the price of the presses to be collected by the printing company and paid by it to the press company, the latter company further agreeing not to attach the numbering and perforating devices to any press previously manufactured and sold, the object of the contract being to prevent any competitor of the printing company from obtaining or using any press built by the press company with the numbering and perforating attachments or which could be used for printing strip tickets of form, design or purpose similar to those printed or that might be printed by the printing company — the contract is not assignable without the consent of the press company, to a corporation organized and incorporated under the laws of West Virginia for the purpose of taking over the business, property and contracts of the New Jersey corporation, which, after assigning all its property and contracts to its successor, was dissolved, since the new corporation was not only technically but substantially a different entity from its predecessor, and the press company is not obliged to intrust its money collected on the sale of the presses to the responsibility of an entirely different corporation from that with which it had contracted.

3. Appeal — Objection Not Raised Below. An objection that the contract in question was void as violating the provisions of the act of Congress, known as the Anti-Trust Act, cannot be considered in the Court of Appeals where it was not raised in the court below.

4. When Covenant Restricting Sale of Presses Not Void as in Restraint of Trade. The fact that the contract restricted the sale of

presses except to the printing company, and that a separate consideration was paid for the covenant of restriction, does not render the contract so unreasonable in its restraint of trade that it is void for that reason, where the adaptation of the press to the special use was the work of both parties and the covenant not to sell other presses for similar work accompanied the manufacture and sale of a press and constituted an integral part of the thing sold.

5. SAME — MEASURE OF DAMAGES IN ACTION FOR BREACH OF COVENANT NOT TO SELL PRESSES TO ANY EXCEPT CONTRACTING PARTY. Where the press company, after the printing company had assigned the contract to its successor and was dissolved, furnished to a rival printing company, owning a press manufactured and delivered before the execution of the contract, the attachment for numbering and perforating tickets, and also constructed and delivered to such rival company an additional press with attachments complete, and an action for an injunction and for damages was brought against the rival company and the press company by the printing company to which the contract was assigned, the measure of damages, if any, is not the total amount of profits received by the rival company from the printing of tickets after the execution of the contract in question, but the difference between the profits made from the use of the press with the numbering and perforating attachments and those made by the use of presses without those attachments, and the burden of proof is upon the plaintiff to establish such difference.

*N. Y. Bank Note Co.* v. *Hamilton Bank Note Co.*, 28 App. Div. 411; 56 App. Div. 488, and 92 App. Div. 427, reversed.

(Argued November 21, 1904; decided January 17, 1905.)

CROSS-APPEALS from a judgment entered March 26, 1904, upon an order of the Appellate Division of the Suprem-Court in the first judicial department, which reversed an order of Special Term denying a motion to confirm the report of a referee appointed, after the entry of an interlocutory judgment granting the plaintiff an injunction, for the purpose of determining the plaintiff's damages, and after modifying the amount awarded, directed final judgment accordingly.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown, George B. Lester* and *Harmon S. Graves* for Hamilton Bank Note Engraving and Printing Company, appellant and respondent. The contract between the New York Bank Note Company of New Jersey and

the Kidder Company is void. (*Bishop* v. *Palmer*, 146 Mass. 469; *G. F. A. T. Co.* v. *Crane*, 160 Mass. 50; *Taylor* v. *Blanchard*, 13 Allen, 370; *Dean* v. *Emerson*, 102 Mass. 480; *D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Greene's Case*, 52 Fed. Rep. 104; *People ex rel.* v. *Warden*, 157 N. Y. 116; *Strait* v. *N. H. Co.*, 18 N. Y. Supp. 224; *Oliver* v. *Gilmore*, 52 Fed. Rep. 562; *B. M. Works* v. *Perry*, 71 Wis. 495.) The rule of damages determined by the Appellate Division, viz., that the defendants were liable for the profits made by the Hamilton Company on all strip tickets printed on the Kidder presses, or for the saving in profit made by printing upon said presses over the profit it would have made by printing the tickets on other presses, is erroneous. (*Ames* v. *Howard*, 1 Sumn. 482; *Blanchard* v. *Sprague*, 3 Sumn. 539; *Brook* v. *Jenkins*, 3 McLean, 437; 1 Robinson on Patents, § 20; *Root* v. *L. S. Ry. Co.*, 105 U. S. 208; *Stockbridge* v. *C. I. Works*, 102 Mass. 80; *Tilghman* v. *Proctor*, 125 U. S. 136; 3 Robinson on Patents, § 1137.) It was erroneous for the Appellate Division to hold that the burden of proof was upon the defendants to show that there was any saving accomplished by the use of the Kidder perfecting presses, over other available methods of printing strip tickets. (*Blake* v. *Robertson*, 94 U. S. 728; *Garretson* v. *Clark*, 111 U. S. 120; *Dobson* v. *Hartford Co.*, 114 U. S. 439; *K. M. Co.* v. *Adams*, 151 U S. 139; *Tilghman* v. *Proctor*, 125 U. S. 136.) There is no proof in the case to sustain the judgment, and the finding that there is no proof that the profits charged to the defendants could have been made by them, but for the use of the Kidder presses, has no evidence to support it and is erroneous. (*Gannon* v. *McGuire*, 160 N. Y. 479; *Hull* v. *Littauer*, 162 N. Y. 569; *S. Nat. Bank* v. *Weston*, 172 N. Y. 258; *Kelly* v. *Burroughs*, 102 N. Y. 93.) The Appellate Division declared the principles upon which the referee had adjusted the damages against these defendants to be erroneous, and found other errors committed by the referee in the adjustment of his account of damages. That court then proceeded to adopt a new and different principle of adjustment,

determine the facts anew, and to fix a new and different amount of damages upon disputed evidence. The action of the Appellate Division, in thus assuming the province of a trial court, is beyond its powers. (Code Civ. Pro. § 1338; *Moffatt* v. *Sackett*, 18 N. Y. 522; *Matter of Chapman*, 162 N. Y. 456; *Whitehead* v. *Kennedy*, 69 N. Y. 462; *New* v. *Vil. of New Rochelle*, 158 N. Y. 41; *Cassin* v. *Delaney*, 38 N. Y. 178; *Cuff* v. *Dorland*, 57 N. Y. 560; *Porter* v. *Dunn*, 131 N. Y. 314; *Van Buren* v. *Wotherspoon*, 164 N. Y. 368; *Snyder* v. *Seaman*, 157 N. Y. 449; *Lopez* v. *Campbell*, 163 N. Y. 340; *Benedict* v. *Arnoux*, 154 N. Y. 715.)

*George Burnham, Jr., Victor J. Loring* and *F. A. Burnham* for the Kidder Press Manufacturing Company, appellant and respondent. The contract is null and void, being in restraint of trade, and made for the purpose of creating a monopoly, and, being in restraint of trade between the states, is prohibited by act of Congress. (26 U. S. Stat. at Large, 209; U. S. Comp. of Stat., 1901, p. 3200.) Plaintiff acquired no rights in the contract of October 12, 1901, by the assignment of December 27, 1892, because the assignment in its terms is insufficient to pass the contract. The contract is not by its terms nor in its nature assignable. (*T. I. & N. Factory* v. *Corning*, 14 How. [U. S.] 193; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209; *A. S. Co.* v. *B. M. Co.*, 127 U. S. 379; Pollock on Cont. [4th ed.] 425; *Delaware Co.* v. *D. S. & L. Co.*, 133 U. S. 473; *Burck* v. *Taylor*, 152 U. S. 634; *Stevens* v. *Benning*, 1 K. & J. 168; *Gibson* v. *Carruthers*, 8 M. & W. 321; *Waller* v. *M. & W. Co.*, 64 Fed. Rep. 664; *H. I. Co.* v. *S. B. I. Works*, 31 S. W. Rep. 599.)

*Edward P. Lyon* and *Percival C. Smith* for plaintiff, respondent and appellant. The contract between the New York Bank Note Company and the Kidder Press Manufacturing Company is valid. (*Peabody* v. *Norfolk*, 98 Mass. 457; Greenwood on Public Policy, 677–704; *Alcock* v. *Gilberton*, 2 Duer, 76; *D. M. Co.* v. *Rober*, 106 N. Y. 473; *M. T. D.*

*& M. Co.* v. *Morse,* 103 Mass. 73 ; *Vickery* v. *Welch,* 19 Pick. 523 ; *Beal* v. *Chase,* 31 Mich. 490 ; *Hodge* v. *Sloan,* 107 N. Y. 244; *Leslie* v. *Lorillard,* 110 N. Y. 519 ; *Tode* v. *Gross,* 127 N. Y. 480.) The contract was strictly assignable. The element of personal trust does not exist when a contract is made with a corporation. (*N. E. Iron Co.* v. *G. E. R. R. Co.,* 91 N. Y. 167; *Clark* on *Cont.* 530 ; Whart. on Cont. 220, § 848 ; *A. V. S. Co.* v. *B. M. Co.,* 127 U. S. 379 ; *M. M. & F. Co.* v. *N. J. S. Y. & M. Co.,* 25 N. J. Eq. 161 ; *Clegg* v. *Hands,* L. R. [44 Ch. Div.] 503.) The rule of damages adopted in the court below was correct as against each and both defendants. (*Amherst College* v. *Ritch,* 151 N. Y. 282 ; *Bomeisler* v. *Forster,* 154 N. Y. 229 ; *Dickinson* v. *Hart,* 142 N. Y. 183 ; *Taylor* v. *Bradley,* 39 N. Y. 129 ; *Bernstein* v. *Meech,* 130 N. Y. 354 ; Story's Eq. Juris. § 64 ; Kerr on Fraud & Mistake [3d ed.], 364 ; Pom. Eq. Juris. § 920.) The Appellate Division had power, if the referee found for plaintiff for too large a sum, to modify the report upon the facts and direct final judgment under the amendment to the Code, section 1022, providing for a short form of decision, provided there was any evidence to warrant the reduction. (*Snyder* v. *Seamans,* 157 N. Y. 448; *Lopez* v. *Campbell,* 163 N. Y. 340 ; *Benedict* v. *Arnoux,* 154 N. Y. 715 ; *Fairchild* v. *Edson,* 154 N. Y. 199 ; *Farrell* v. *M. R. R. Co.,* 43 App. Div. 143 ; *Earle* v. *Gorham M. Co.,* 2 App. Div. 460.)

Cullen, Ch. J. In 1891 the plaintiff's assignor, a corporation bearing the same name as that of the plaintiff, but incorporated under the laws of the state of New Jersey, was doing a large business in furnishing strip tickets, which, printed on both sides and consecutively numbered, were used by the elevated railroads, the ferries and other transportation companies. The defendant, the Kidder Press Manufacturing Company, at this time manufactured a press known as the " Kidder Perfecting Press," the distinguishing feature of which was its ability to print on both sides of the paper by successive opera-

tions but without taking the roll of paper from the press. This rendered the press especially available in the printing of strip tickets, but by itself the machine could not produce such tickets which required to be consecutively numbered and the space between the tickets perforated so that they could be easily separated. As found by the trial court several devices were invented by Mr. Kendall, representing the bank note company, and Mr. Kidder of the press manufacturing company, by the attachment of which to the press the latter was able to print, number and perforate tickets. The devices or attachments were not patented, nor does it appear by the evidence that they were patentable. Under these circumstances the two companies on the 12th day of October, 1891, entered into a written agreement whereby the Kidder Company agreed to manufacture and deliver to the bank note company another press in addition to the one theretofore furnished, with numbering and perforating attachments adapted to the printing of strip tickets, for the sum of $4,500. The details of the press are specified in full in the contract, but are not material to this controversy. The contract contains these further provisions :

" It is hereby agreed that the price of the press shall be the sum of Four thousand Five hundred dollars (4,500), but that the amount of this contract shall be the sum of Six Thousand Dollars (6,000), the additional Fifteen hundred dollars ($1,500) being a payment to the Kidder Press Company by the New York Bank Note Company for an insurement, protection, guarantee, contract, and delivery to the Bank Note Company of a monopoly of all future machines built or that may be built by the Kidder Press Company or any party on the lines of its patents on the press herein contracted for, upon which there can or may be printed strip tickets substantially the same as those now printed by the New York Bank Note Company or of similar form or design, to wit :

" The Kidder Press Company hereby agrees not to sell any presses on which strip tickets may be printed, as aforesaid, that they make, control, are interested in the patents on, may

be interested in the patents on, or have been interested in the patents on, to any one except the New York Bank Note Company, the object being to insure the said press or presses against being used for the printing of strip tickets of form, design or purpose similar to those now printed or that may be printed by the Bank Note Company upon the press now operated by it, purchased from the Kidder Press Company.

" But there is nothing in this contract, nor is it the intention of either of the contracting parties, to limit the sale of this press alluded to above either as the one now used in the Bank Note Company purchased from the Kidder Press Company, or the one hereby contracted for to be delivered to the Bank Note Company by the Kidder Press Company, for any purpose except for printing of strip tickets substantially the same as those now made by the Bank Note Company.    On the contrary, it is the pleasure of the Bank Note Company, its officers and directors, as well as, presumably, the profit of the Kidder Press Company, that it shall make, sell, deliver and collect the money for as many presses similar to the one now in use by the Bank Note Company, heretofore adverted to, or the one hereby ordered from the Press Company, and shall enjoy all of the emoluments of the utmost possible extension to the Press Company's business by reason of the sale of printing presses identical with those herein alluded to.

" The Fifteen hundred dollars ($1,500) paid or to be paid to the Kidder Press Company, as herein mentioned, is for the purpose of securing to the New York Bank Note Company whatever advantages may arise from the impossibility of any of its competitors obtaining or using a press built by the Kidder Press Company of substantially the same design as those which the Bank Note Company is contemplating using in its strip ticket business aforesaid.

" The contract shall remain in force not to exceed a term of twenty years from the date of this contract.

" The Press Company hereby agrees not to make alterations or additions to any existing presses that they have already built that would enable the press to print strip tickets with-

out requiring the parties owning the press, or might buy it thereafter, to make the same terms and agreements regarding it as though it were a new machine.

"The Kidder Press Company hereby states that the only presses of their manufacture upon which strip tickets can be possibly run are as follows:

"One owned by Allen, Lane and Scott, of Philadelphia, and

"One owned by Weed, Parsons and Company, of Albany.

"And the Kidder Press Company hereby agrees not to sell any press to either of the two foregoing concerns without an agreement which shall bring the presses that they now have, as above enumerated, capable of printing strip tickets, within the same restrictions as though these two presses above enumerated were sold to them new, subsequent to the date of this contract.

"It is hereby agreed and assented to by the Kidder Press Company and the New York Bank Note Company that the most feasible and proper way to protect the interests of the Bank Note Company in and to the proper control and ownership hereby acquired in the Kidder Perfecting Press, which is the technical name by which the machinery herein adverted to is known, is that whatever sales of this press or presses are made by the Kidder Press Company shall be made to the New York Bank Note Company for the account of the party desiring to use the press or presses, and the New York Bank Note Company shall execute a perpetual lease to said third party for such money as the Kidder Press Company shall nominate; but the New York Bank Note Company shall in nowise part with the title in and to the machine delivered, but shall retain its actual ownership of the press or presses under agreements preventing its use for all purposes except strip tickets within the United States; but that the presses shall not under any pretext whatever be taken outside of the jurisdiction of the United States of America during the said twenty years. And this form of agreement, as substantially set forth herein, it is hereby agreed by the Kidder Press Company shall be used in whatever sales are made of its Perfecting

Presses.   And the New York Bank Note Company shall deliver to the Kidder Press Company the full consideration it (the Press Company) may nominate, and the Bank Note Company shall have its own agreements with the purchaser in accordance with the above plan, and litigate at the Bank Note Company's own expense the agreements with said purchaser or purchasers if the agreements are broken."

The Kidder Company furnished the press under this contract.  The bank note company paid the full sum of six thousand dollars.   In 1892 the defendant the Hamilton Bank Note Company, a business competitor of the plaintiff, obtained the contract for printing the elevated railroad tickets.   In December of that year it purchased from the Kidder Company a perfecting press substantially like the one sold to the plaintiff's assignor, but without the strip ticket attachments and not subject to any restriction against its use in the printing of such tickets.   In December, 1892, the plaintiff's predecessor, the New Jersey corporation, assigned all its property and contracts to the plaintiff, a corporation organized under the laws of West Virginia and thereupon the New Jersey company was dissolved.   The Kidder Company had refused to furnish to the Hamilton Company the strip ticket attachments, but after the dissolution of the New Jersey corporation, and in the autumn of 1893, it not only furnished such attachments, but also constructed and delivered to the Hamilton Company an additional press with attachments complete. The trial court held that the contract was assignable and that all rights of the New Jersey corporation under it had passed to the plaintiff; that the sales by the Kidder Company to the Hamilton Company constituted breaches of the agreement; that at the time of the purchase of the first press the Hamilton Company had no knowledge of the contract rights of the plaintiff but that the subsequent purchases of the attachments for the first press and of the second press were made with knowledge of the plaintiff's rights.   An interlocutory judgment was rendered enjoining the Hamilton Company from using either press for the purpose of printing strip tickets

and from selling or parting with the same except under valid restrictions prohibiting such use. Judgment was also awarded to the plaintiff for the profits made by the Hamililton Company in the printing of strip tickets on such presses, and a reference ordered to ascertain such profits, and the Kidder Perfecting Company was enjoined from selling any more presses without proper restrictions against their use in strip ticket printing. By the judgment, as amended by the trial court, the profits for which the defendants were directed to account were restricted to the time subsequent to the purchase of the strip ticket attachments placed on the first press.

From this judgment both parties appealed to the Appellate Division. That court modified the judgment by extending the period for which the defendants were directed to account back to the time of the sale of the first press, holding that the trial court erred in its finding that the press was purchased by the Hamilton Company without knowledge of the plaintiff's rights. That court modified the judgment by directing that the plaintiff recover of the defendants damages sustained by it by the breaches of the contract, which damages should be " the profits made by the defendant the Hamilton Bank Note Company upon all strip tickets printed by it upon the two aforesaid presses purchased from the Kidder Press Manufacturing Company, known as the Kidder Perfecting Press on proof before the referee that the Kidder Perfecting Press was the subject of a monopoly for strip ticket printing by virtue of outstanding patents, or was the only available machinery for printing strip tickets, or on proof that the Hamilton Company could not have obtained the contracts to print said tickets, except by means of the Kidder Perfecting Press, and in the absence of such proof that the damages shall be the saving in profit on said tickets by the use of the Kidder Perfecting presses, from the profits it would have made by printing the same on the press in its possession or known to and purchased by it prior to December 29th, 1892." It will be noted that one of the effects of this modification was to render the Hamilton Company liable for any profits obtained

19

through printing strip tickets on the press purchased by it in December, 1892, the Appellate Division holding that the find-ing of the trial court that such purchase was made without knowledge by the Hamilton Company of the plaintiff's rights was against the weight of evidence. A reference held under this judgment resulted in a report awarding the plaintiff six cents damages. This report was confirmed by the Special Term and final judgment thereon was entered. Again, both parties appealed to the Appellate Division. On the plaintiff's appeal the judgment was reversed and a new reference ordered to ascertain its damages. The second reference resulted in an award to the plaintiff for $73,058.86 damages, with interest thereon, amounting in the aggregate to $105,248.38. A motion to confirm this report was denied at Special Term. On appeal that order was reversed by the Appellate Division. The award of the referee was modified so as to award the plaintiff the sum of $60,546.95 with interest from November, 1902, the date of the referee's report. Final judgment was entered on this decision. From that judgment both parties appealed to this court, the plaintiff claiming that the award to it should be increased by a further allowance of interest.

On this record it is quite plain that an error has been com-mitted in practice which requires a reversal of the judgment below and a new trial of the cause. As already stated, the trial court found as a fact that the defendant the Hamilton Company, when it purchased the first press, had no knowledge of the rights of the plaintiff's predecessor under its contract with the Kidder Company. The Appellate Division not only reversed this finding of fact, as it was authorized to do, but it made a finding of fact to the contrary and modified the inter-locutory judgment so as to accord with the new finding. This the Appellate Division had no authority to do, but should have ordered a new trial to which the defendants were clearly entitled. In this respect the practice in this case before us has been substantially the same as that condemned by our decision in *Van Beuren* v. *Wotherspoon* (164 N. Y. 368). The error affects the whole judgment. If the Hamil-

·ton Company purchased the press without knowledge of the plaintiff's rights, concededly it was entitled to use that press for all purposes, and so far as the judgment restrained such use it was improper. This might be obviated by a modification of the restraining part of the judgment. The effect of the error, however, goes much further. It permeates the award for damages. If the Hamilton Company purchased the press without notice of the plaintiff's contract, no damages should have been awarded against that defendant for the use of that press at all, but the damages should have been limited to the use of the devices that were subsequently attached to it. For this error, in accordance with our decision in the *Van Beuren* case, the judgment must be reversed and a new trial granted, costs to abide the event.

As the parties have been in litigation for some ten years, and the defendants challenge the right of the plaintiff to maintain the action at all, as well as the rule of damages established by the decisions of the Appellate Division, questions which will arise on any new trial in the same manner as they have on the trial already had, we think it but fair to dispose of those questions so that the parties may not be remitted to a litigation of indefinite continuance. The appellants first claim that the contract between the Kidder Company and the plaintiff's predecessor was personal and not the subject of assignment. This claim was fully discussed by the Appellate Division on the appeal from the interlocutory judgment. (28 App. Div. 411.) It was there held by a divided court that the assignment to the plaintiff was effectual. Doubtless, the general rule is that an executory contract not necessarily personal in its character, which can, consistent with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract. (*Devlin* v. *Mayor, etc., of N Y.*, 63 N. Y. 8; *New England Iron Company* v. *Gilbert Elevated R. R. Co.*, 91 N. Y. 153; *Rochester Lantern Co.* v. *Stiles & Parker Press Co.*, 135 N. Y. 209.) So an agreement by a vendor on the sale of a business and its good will not to enter into a similar business at the same

place during a specified period may be assigned by the vendee on a subsequent sale of the business by him. (*Francisco* v. *Smith*, 143 N. Y. 488.) Therefore, the objection to the assignment of this contract does not lie in that feature. It lies, if at all, in those provisions of the contract which prescribe that the title to all presses manufactured by the Kidder Company for third parties shall be transferred to the New York Company and the presses leased by that company under restrictions as to their use, the New York Company to collect from such third parties the purchase price of the presses and account for the same to the Kidder Company. Judge Patterson, writing for the minority of the court, thought these provisions constituted a contract of agency and that the contract was not assignable because it involved the duties of agency. Judge O'Brien, for the majority of the court, while holding that under the contract the purchase price for the machines sold to third parties was to be collected in the first instance by the New York Company, which was to account therefor to the Kidder Company, and while admitting the general rule that rights arising out of a contract cannot be transferred if they are coupled with liabilities (*Arkansas Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379), thought that the general doctrine did not apply to this particular case. He said that there was no substantial substitution of parties. "Technically, the contract was assigned; but practically, it was not. The assignment was part of the reorganization, and but a means to that end. With it were assigned all the property and choses in action of the original company, with the exception of one designated claim. The stock of the new company was distributed ratably among the stockholders of the old. Technically, the new company was a distinct legal entity from the old; but to all intents and purposes it was the same concern. * * * The risk of such changes is assumed by every one who contracts with a corporation. * * * To hold that it was an 'assignee' of the contract, within the meaning of the rule relied upon, is to regard the form and disregard the substance." From this we wholly dis-

sent.   The plaintiff was not only technically but substantially a different entity from its predecessor.   It is true that in dealing with corporations a party cannot rely on what may be termed the human equation in the company; the personnel of the stockholders and officers of the company may entirely change. But though there is no personal or human equation in the management of a corporation there is a legal equation which may be of the utmost importance to parties contracting with it. In dealing with natural persons in matters of trust and confidence personal character is, or may be, a dominant factor. In similar transactions with a corporation, a substitute for personal character is the charter rights of the corporation, the limits placed on its power, especially to incur debt, the statutory liability of its officers and stockholders.   These are matters of great importance when, as at present, many states and territories seem to have entered into the keenest competition in granting charters, each seeking to outbid the other by offering to directors and stockholders the greatest immunity from liability at the lowest cash price.   The defendant, the Kidder Company, could not be obliged to intrust its money, collected on the sale of the presses, to the responsibility of an entirely different corporation from that with which it had contracted, and we hold that the contract could not be assigned to the plaintiff without the assent of the other party to it.

The appellants claim that the contract itself was void, as violating the provisions of the act of Congress known as the Anti-Trust Act and as in restraint of trade.   The objection that the contract contravened Federal legislation was not made in the courts below and cannot be raised in this court for the first time.   (*Purdy* v. *Erie R. R. Co.,* 162 N. Y. 42; *Kennedy Corpn.* v. *Kennedy,* 165 N. Y. 353.)   We are of opinion also that the contract is not so unreasonable in its restraint of trade as to be condemned on that account.   Contracts creating reasonable restraints of trade have generally been upheld, the question in most cases being whether the restraint was reasonable or not.   The old cases judged such contracts by very strict standards but they have been regarded more

favorably by later decisions.   The case of *Diamond Match Company* v. *Roeber* (106 N. Y. 473) was quite a departure from the old law.   In that case an agreement, on the sale of business, that the vendor should not engage in a similar business in the United States, with the exception of the state of Nevada and the territory of Arizona, was upheld.   It was there said : " The tendency of recent adjudications is marked in the direction of relaxing the rigor of the doctrine that all contracts in general restraint of trade are void irrespective of special circumstances."   The principle of that case has been fully carried out in the subsequent decisions of this court. (*Hodge* v. *Sloan*, 107 N. Y. 244; *Leslie* v. *Lorillard*, 110 N. Y. 519; *Tode* v. *Gross*, 127 N. Y. 480, and *Wood* v. *Whitehead Bros. Co.*, 165 N. Y. 545, 550.)   Usually agreements of this kind have been incidental to contracts for the sale of business or property.   In the *Lorillard* case, however, there seems to have been no sale of property, and in the *Wood* case the point was raised and it was expressly decided that the fact that such an agreement was not made as collateral to a sale of property did not render it invalid.   In the present case the contract divides the consideration paid the Kidder Company into two parts, $4,500 for the new press, $1,500 for the covenant not to sell similar presses for use in the strip ticket business.   Though the consideration is thus divided I think the contract should be treated as an entirety and that the covenant not to sell other presses should be deemed as collateral and in aid of the covenant to manufacture the press sold.   However this may be, the fact that a separate consideration was paid for the restraining covenant under the cases cited would not render the covenant void.   The circumstances of the case are somewhat peculiar.   There was no monopoly of strip ticket printing.   Such printing had been done for many years prior to the contract between the parties, but by the ingenuity and efforts of both parties to the contract, as found by the trial court, a press manufactured by the Kidder Company was modified and adapted so as to print such tickets more cheaply than other methods then in use.   The agreement

seems to assume that the Kidder perfecting press or some parts of it were at the time patented. The evidence tends to show that while there was no patent on the press itself there was a patent on the device for feeding the roll of paper to the press. So far as the machine was the subject of patent its use was lawfully a monopoly, and, therefore, no contract relating to it could be condemned as creating a monopoly. But whatever may have been the case as to the patentable character of the machine, we think the fact that its adaptation to the special use was the joint work of both parties, and that the covenant not to sell other presses for similar work accompanied the manufacture and sale of a machine, rendered that covenant reasonable as constituting an integral part of the value of things sold. In this respect it seems to us to fall within the principle of *Tode* v. *Gross* (*supra*).

The last question to be considered is the rule of damages. The plaintiff has been awarded the whole profits that accrued to the Hamilton Company under its contract with the elevated railroad company for printing strip tickets, so far as those tickets were printed on these presses. We think this was erroneous. As already said, the plaintiff had no monopoly of printing strip tickets. The most that can be said is that by its exclusive possession of a particular device it was able to do the work at a less cost than its competitors. The defendant, the Hamilton Company, had obtained the contract from the elevated railroads before it entered into any negotiations with the Kidder Company or made any purchase from it. The profits accruing to it from that contract did not necessarily or presumptively proceed from the use of the Kidder presses. Such profits involved many other elements. *First*, the contract price may have been large and generous, and the contract, therefore, profitable under any circumstances. *Second*, there may have been either a profit or loss in the purchase of the materials used. The same is true also as to the cost of labor, rent, expenses of conducting business. These items, which properly constitute no factor of the plaintiff's damages, form the basis

of the award made by the courts below. If we assume that the other elements of the cause of action were properly established, then the plaintiff was entitled to recover not the profit made by the defendant, the Hamilton Company, under its contract, but the profit that company made from the use of the restricted presses; that is to say, the difference between the cost of printing the tickets by those presses and the cost of printing them by other presses or devices obtainable by the Hamilton Company, and the burden of proof was on the plaintiff to establish such difference in cost. This is the rule established by the Supreme Court of the United States in patent cases, and the plaintiff's rights to the exclusive use of the press for strip ticket printing under this contract cannot be greater than if it held such right under letters patent. In *Mowry* v. *Whitney* (14 Wall. 620) the measure of damages was held to be " what advantage did the defendant derive from the use of complainant's invention over what it had in using other processes then open to the public and adequate to enable him to obtain an equally beneficial result." (Approved, *Tilghman* v. *Proctor*, 125 U. S. 136.) In *Garretson* v. *Clark* (111 U. S. 120) it was held that " The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features and such evidence must be reliable and tangible, and not conjectural or speculative." (Approved, *Keystone Mfg. Co.* v. *Adams*, 151 U. S. 139.) *Dobson* v. *Hartford Carpet Company* (114 U. S. 439) was a suit for damages for the infringment of a patented design for carpets. It was there said by the court: " The burden is upon the plaintiff, and, if he fails to give the necessary evidence, but resorts, instead, to inference and conjecture and speculation, he must fail for want of proof. There is another suggestion of great force. The carpet with the infringing design may be made on an infringing loom, and various infringing processes or mechanisms for carding, spinning or dying may be used in making it, and, if the entire profit in making and selling it is necessarily to be attributed to the pattern, so it may as well,

on principle, be attributed to each of the other infringements, and a defendant might be called on to respond many times over for the same amount. There is but one safe rule — to require the actual damages or profits to be established by trustworthy legal proof." So in this case the issue should be a comparatively narrow and simple one, the difference between the cost of printing on the Kidder presses and the cost of printing by other means or devices open to the defendant.

I advise a reversal of the interlocutory and final judgments and that a new trial be granted, costs to abide event.

GRAY, J. I concur with Chief Judge CULLEN's opinion that the modification by the Appellate Division was, in effect, a reversal of the finding of fact by the trial court, that the Hamilton Company purchased the press of the Kidder Company without knowledge of the rights of the plaintiff's predecessor under its contract with the Kidder Company. That was a question of fact upon the evidence and if the Appellate Division deemed that the evidence was insufficient to sustain it, and that it warranted a contrary finding upon the subject, it might have directed a new trial of the issue. It could not, (as its opinion clearly shows that it has done), order a judgment for damages, which, necessarily, is based upon a different determination as to the issuable facts. I, also, concur with his opinion in the view that the contract was not unenforceable, as being in restraint of trade. It imposed no restraint upon the Kidder Company in the sale of presses. It created no monopoly. It operated, simply, to protect the plaintiff's predecessor in the enjoyment of its rights in a press, which, by the joint skill and industry of the parties, accomplished certain extraordinary results in the process of printing tickets. It prevented a dangerous competition, or rivalry, in the business of the plaintiff's predecessor and the loss of a benefit, to which it was entitled upon legitimate business principles. All competition was not excluded; but such competition, only, as would prevent that company from reaping the profits of the possession of a press, which, by the addi-

tion of the particular devices, made possible economies in the time and cost of printing strip tickets. The restraint was not upon the manufacture and sale by the Kidder Company of its presses; but, only, upon the use of a machine for the manufacture of strip tickets by the purchaser. I think it was quite lawful for the party, in contracting for the purchase of a press, to contract, further, for the protection of a business, which depended for its success upon the use of the press with peculiar attachments, or devices.

I, also, concur with the opinion, in what is said upon the error in the adoption of a rule of damages, which gave to the plaintiff all of the profits accruing to the Hamilton Company under its contract for the printing of tickets upon the Kidder presses. I think the burden of proof rested upon the plaintiff to establish what saving, if any, resulted to the Hamilton Company and, hence, what profits, from the use of the Kidder presses, and the terms of the order of the Appellate Division, with respect to the interlocutory judgment referring for proof of damages, appear to have so placed it.

But I am compelled to differ in opinion with respect to the question of the assignability of this contract. In my opinion, it was assignable and passed to the present plaintiff upon the transfer to it by its predecessor, the New Jersey corporation. The plaintiff, as it was found by the trial court, succeeded to the business of the New Jersey company and became possessed of all its assets and property. It was, in fact, but a reorganization of the old New York Bank Note Company, under the laws of another state, to take over the business and effects of that company. How the element of personal trust, or confidence, which may confer upon the agreements of parties the character of non-assignability, could be found in this contract I am unable to understand. It did not prevent an assignment by its language and what are the features, which make it a non-assignable instrument? They are said to be in those provisions, which prescribe that the title to presses manufactured by the Kidder Company for others should be vested in the New York Bank Note Company, which should transfer them

by form of leases; accounting to their manufacturer for the price received.  But, while that may be regarded as creating an agency, it was not one as ordinarily constituted; for the bank note company did not procure the purchasers.  The arrangement was one made, altogether, for the benefit of that company and was intended as its protection against an unfair business rivalry.  It was the "most feasible and proper way to protect its interests," as the contract terms it.  The moneys proceeding from the sale of presses did not belong to the bank note company; but were to be handed over to the Kidder Company.  The plaintiff was, of course, a different corporate entity from its New Jersey predecessor; but it possessed the same business interests; had the same corporate purpose and was as capable of performing the duties imposed upon it by the contract, as was its assignor; for the main obligation was to pay over moneys received from purchasers of presses.  The work of a corporation is done through its servants, or agents, and, therefore, the contract could not involve the personal relation, or confidence, which might be predicated of it, where it was to be performed by a natural person.  (*New England Iron Co.* v. *Gilbert Elev. R. R. Co.*, 91 N. Y. 153, 167; *Rochester Lantern Co.* v. *Stiles & Parker Press Co.*, 135 ib. 209.)  While the liability of the bank note company to account for the moneys received as the price of presses manufactured by the Kidder Company might appear, at first, to bring the case within the operation of the accepted rule, that rights arising out of contract cannot be transferred, if they are coupled with liabilities, (Pollock on Contracts, [4th ed.], p. 425), it seems clear to me that the rule is not applicable to such a case as this.  The assignee here is a corporation, organized to take over the properties of the assignor, with like corporate purposes and powers.  Its interests and its concerns are the same as the corporation, for which it was substituted, and I cannot think that it is for the Kidder Company to say that a provision of the contract, plainly intended only for the protection of the interests of the other contracting party, involved a relation of personal confidence and gave to the former a particular interest in a per-

formance only by the latter. I am in accord with the views expressed by Mr. Justice O'BRIEN, at the Appellate Division, when discussing this question.

I vote, therefore, for the reversal of the judgment upon the other grounds discussed in the chief judge's opinion.

O'BRIEN, BARTLETT, HAIGHT and VANN, JJ., concur with CULLEN, Ch. J.; GRAY, J., reads for reversal; WERNER, J., absent.

Judgments reversed.