[No. 12708.   Department One. — June 6, 1890.]

HUGH M. LA RUE, RESPONDENT, *v.* G. GROEZIN-
· GER, APPELLANT.

CONTRACT— ASSIGNABILITY. — A contract by which A agrees to sell and B
   to buy all the grapes of a certain standard which A may raise upon a
   certain vineyard during a certain period is assignable by A.
ID. — CONSTRUCTION. — If the contract provides that the grapes shall not be
   gathered until they contain a certain percentage of saccharine matter,
   the buyer is not bound to receive grapes containing less saccharine matter.

APPEAL from a judgment of the Superior Court of
Napa County, and from an order refusing a new trial.

The facts are stated in the opinion.

*F. E. Johnston,* and *E. W. McKinstry,* for Appellant.

The contract in question was purely personal, and not
assignable.   (*Schultz* v. *Johnson,* 5 B. Mon. 497; *Arkansas
Smelting Co.* v. *Belden Co.,* 127 U. S. 390; Pollock on
Contracts, 425; *Dickenson* v. *Callahan,* 16 Pa. St. 227;
*Boston Ice Co.* v. *Potter,* 123 Mass. 30; *Schmaling* v. *Tom-
linson,* 6 Taunt. 147; *Robson* v. *Drummond,* 2 Barn. &
Adol. 303; *Humble* v. *Hunter,* 12 Q. B. 311; *Boulton* v.
*Jones,* 2 Hurl. & N. 564; *Lansden* v. *McCarthy,* 45 Mo.
106; *Devlin* v. *Mayor,* 63 N. Y. 8; *Taylor* v. *Palmer,* 31
Cal. 241.)

*A. P. Catlin,* and *Dennis Spencer,* for Respondent.

The contract was assignable.   (2 Wharton on Con-
tracts, sec. 848; Pomeroy's Remedies, sec. 174; *British
Wagon Co.* v. *Lea,* L. R. 5 Q. B. Div. 149; *Roorback* v.
*North,* 6 Johns. Ch. 469; *Horner* v. *Wood,* 23 N. Y. 350;
*Devlin* v. *Mayor,* 63 N. Y. 8, 16; *Parsons* v. *Woodward,* 22
N. J. L. 196; *Philadelphia* v. *Lockhart,* 73 Pa. St. 211;
*Sears* v. *Conover,* 4 Abb. App. 179; *Tyler* v. *Barrows,* 6
Robt. 104; *California Steam Nav. Co.* v. *Wright,* 6 Cal.
258; 65 Am. Dec. 511; *Taylor* v. *Palmer,* 31 Cal. 247;
*McCauley* v. *Brooks,* 16 Cal. 24; *Wood* v. *Truckee T. Co.,*
24 Cal. 474; *People* v. *Duncan,* 41 Cal. 507.)

HAYNE, C.—This was an action for damages for the breach of a contract to buy grapes. The substance of the material portions of the contract was as follows:—

One Hopper agreed to sell all the grapes which he might raise during a period of ten years from the vines which were then growing, or which he might thereafter plant, in a certain vineyard. The grapes were to be "sound," and were to be gathered when they contained twenty-two per cent of saccharine matter, and to be delivered in boxes at the wine-cellar of the defendant,— the "first crop" to be delivered separately from the "second crop" of the same year. In consideration whereof the defendant agreed to accept the grapes and pay for them (after delivery) at the rate of twenty-five dollars per ton, in specified installments,—any advancements which might be made to draw interest at a given rate.

The parties performed this contract for five years. At the end of that time, viz., in October, 1885, Hopper conveyed the vineyard and assigned the contract to the plaintiff. At the time of the transfer the "first crop" of that year was being delivered by third parties, who had made advances upon it. The plaintiff does not appear to have had anything to do with this crop. He gathered the "second crop" of the same year, however, and delivered it to the defendant, who accepted and paid for it. This crop, it will be observed, was grown during the ownership of Hopper, and consequently may be supposed to have received the benefit of whatever care and skill he may have been able to give to it. The crop of the following year was grown, gathered, and tendered by the plaintiff. The defendant refused to accept it, saying that he had no contract with the plaintiff, and was not buying grapes. The plaintiff thereupon sold the crop to the best advantage he could, and brought this action to recover the difference in price and the expenses of resale. The jury rendered a verdict

in his favor for $2,473.20, and judgment was entered accordingly. Afterward the court required him to remit $119.20 as a condition of denying the defendant's motion for new trial. Such remission was made, and the defendant appeals from the judgment and the order denying a new trial.

1. It is contended that the contract was not assignable.

The rule of the early common law as to the assignability of choses in action has been much changed in modern times. The Civil Code of this state provides that written contracts " for the payment of money or personal property " may be transferred *by indorsement* in the same manner as negotiable instruments. (Sec. 1459.) And there are other provisions, which are more sweeping, viz.: —

" Sec. 1044. Property of *any kind* may be transferred, except as otherwise provided by this article."

" Sec. 1458. A right arising out of an obligation *is the property* of the person to whom it is due, and may be transferred as such."

These sections seem to do away with whatever restrictions there may formerly have been upon the power of the parties to assign their ordinary contracts. It is clear, however, that the provision cannot be construed to render assignable all contracts whatever, regardless of their nature or effect, but must be taken with some qualification.

In the first place, it was not intended to render null any agreement that the parties may have made on the subject. Hence, if the contract itself provides in terms that it is not transferable, it certainly cannot be transferred, although it otherwise might be so. Leases, and the tickets usually issued by railroad companies, are familiar instances of this. Upon the same principle, although a contract may not expressly say that it is not transferable, yet if there are equivalent expressions or

language which excludes the idea of performance by another, it is not assignable. Of this character is the case of *Shultz* v. *Johnson*, 5 B. Mon. 497, which is much relied upon for the appellant. There the defendant agreed to buy from one Johnson successive crops of hemp, "of his own raising"; and it was held that the defendant could not be compelled to accept hemp raised by Johnson's administrator. The court said that "the question .... in every case must turn at last upon the intention of the parties," and that the phrase "of his own raising" meant that the hemp was to be raised by him or under his personal superintendence and direction.

Upon the same principle it would probably be held that if the contract provided that it was not to be assigned *to a particular person*, it could not be assigned to such person. And it would seem, from one of the cases cited by the appellant, that if an intention not to deal with a particular person appears from circumstances outside of the contract, it cannot be assigned to such person. In the case referred to, the plaintiff had previously been supplying the defendant with ice; but the latter had become dissatisfied and had transferred his custom to a company called the Citizens' Ice Company, and had made a contract with it. After this the plaintiff bought out the Citizens' Ice Company, and without letting the defendant know of the transfer, went on supplying him with ice. When the defendant found out what had been done, he refused to pay for the ice, and the court held that he was not liable, although he had consumed the ice, and had no fault to find with it. (*Boston Ice Co.* v. *Potter*, 123 Mass. 30.) We think that this case may be distinguished from the one before us, on the ground of the extraneous circumstances showing the defendant's intention not to deal with the plaintiff. If it cannot be so distinguished, we should be inclined to question the soundness of the decision.

In the next place, although the language may not show an intention that the contract should not be assigned, yet the nature of the case may be such that performance by another would be *an essentially different thing* from that contracted for.  Thus a picture by one artist is an essentially different thing from a picture on the same subject by another artist; and so of a book composed by an author, or any other act or thing where the skill, credit, or other personal quality or circumstance of the party is a distinctive characteristic of the thing contracted for, or a material inducement to the contract.  Under this general head come several cases relied upon for the appellant.  Thus in *Lansden* v. *Mc-Carthy*, 45 Mo. 106, it was held that a contract to deliver meat to a hotel, *to be paid for at the end of each month*, could not be assigned by the hotel-keeper; the court saying: "The defendant's estimate of the solvency and pecuniary credit and standing of the plaintiff's assignor may have constituted an important inducement to the contract without which he never would have entered it." So in *Arkansas Smelting Company* v. *Belden Co.*, 127 U. S. 388, it was held that a contract to sell ore to a smelting company, the price of which was to be adjusted and paid by the mutual acts of the parties after delivery, was not assignable by the smelting company; the court, per Gray, J., saying: "During the time that must elapse between the delivery of the ore and the ascertainment and payment of the price, the defendant had no security for its payment, except in the character and solvency" of the smelting company.

If, therefore, the case before us comes within either of the qualifications above stated, then it must be conceded that the contract was not assignable.  But if it does not, — that is to say, if the language does not exclude the idea of performance by another, and the nature of the thing contracted for, or the circumstances of the case, do not show that the skill, credit, or other personal quality

or circumstance of the party was a distinctive character-
istic of the thing stipulated for, or a material induce-
ment to the contract,—then the contract was assignable,
under the provisions above quoted.   It is obvious, there-
fore, that, in this state at least, the question whether a
contract is assignable is a question of construction.   As
was said in the Kentucky case above referred to, "the
question . . . . in every case must turn at last upon the
intention of the parties."   But upon a proper construc-
tion, there is nothing to show that the contract was not
assignable.

(*a*) There is nothing in the language which excludes
the idea of performance by another.

The mere fact that the name of the owner of the vine-
yard was used does not exclude the idea of such perform-
ance.   The name of the contracting party is almost
always inserted as a convenient means of identification.
Thus where John Smith signs a contract which stated
that John Smith agrees to pay John Doe a sum of money
in consideration of a conveyance of land which the latter
agrees to make to the former upon such payment, there
can be no doubt that the use of Smith's name does not
indicate an intention that his assignee could not perform
the contract.   To say otherwise would be to say that
hardly any contract is assignable unless the word "as-
signs," or equivalent language, is inserted, which would
hardly be contended.

Nor is the use of personal pronouns of more signifi-
cance.   The counsel for the appellant lay stress upon
the circumstance that Hopper agreed to deliver "all the
grapes *he* may raise on the vines *he* now has growing on
*his* place," etc.   But it seems clear that these pronouns
were used as equivalents of the proper name, and merely
to save repetition of such name.   They do not import a
desire for the personal services or attention of the owner
as contradistinguished from his assignee.   This will be
readily seen if the same words are applied to different

subject-matter.   Thus if it be agreed to buy from another at a fixed price a specific quantity of fire-wood, which *he* agrees to cut during a certain period from the timber *he* then has growing upon *his* farm, etc., it would surely not be argued that the mere language indicated that the wood was to be cut by the owner himself, or by his agents, and not by his assignee.   And so of similar language in contracts to pay money, to convey land, and the like.

(*b*) There is nothing in the nature or circumstances of the case which shows that the skill or other personal quality of the party was a distinctive characteristic of the thing stipulated for, or a material inducement to the contract.

There is no evidence that grapes for wine-making, containing a specified amount of saccharine matter, raised upon a particular vineyard by one man, would necessarily or probably be different from grapes raised from the same vines by another man.   Possibly there would be a difference between grapes from different vineyards, as the difference between the climate and soil of different places in close proximity is known to be considerable.   But here not only is the vineyard the same, but the vines were the same, — that is to say, the crop in question was from vines planted by the assignor.

It is not impossible that one man might have some peculiar skill or secret by which he could raise better grapes from the same vines than other men could.   But there is no evidence that there was any such peculiarity about the original owner of this vineyard, and we do not think that the court will *assume* that there was.   And while it is to be conceded that men have perfect liberty to contract with whom they choose, and to exclude the idea of performance by another, yet in the absence of anything indicating such an intention, we do not think that the court should indulge in speculation as to possible prejudice or fancied preference.   It should not assume that the parties were influenced by unusual or

conjectural motives merely because some men might be so affected under similar circumstances. For example, some men of solvency and credit have preferences as to the persons from whom they borrow money, and would be displeased at having their paper passed around among usurers. Yet at the present day all the courts would hold that, in the absence of indication of a contrary intention, contracts for the payment of money are assignable. So in many cases owners of real property have some choice as to the persons they admit as tenants. Yet it is well settled that an ordinary lease is assignable by the tenant, in the absence of the manifestation of a contrary intention. And the case of a lease is not to be disposed of by saying that it is an interest in property. For by the express provision of the code, the right to the performance of an obligation is property. (Civ. Code, sec. 1458.)

These instances, and others which might be mentioned, show that it will not do to indulge in conjecture as to fanciful and unusual motives and prejudices. Now, in the case before us, as has been stated, there is no evidence of anything from which it can be inferred that performance was to be by the original owner of the vineyard, and not by another. Suppose that he had gone to live permanently in Europe, and had given no kind of attention or supervision to the place, would it have been contended that under such circumstances the defendant would have been justified in refusing to accept grapes of the required standard grown upon the vineyard by an agent? We imagine not. And in the case put, there would be no kind of supervision by the owner, who would be entirely and permanently absent. And it seems purely fanciful to say that in such case he would exercise some skill in the selection of an agent, and that the parties must be supposed to have had this in view. Now, if in the case put the defendant would be liable, how can it be said that the circumstances show that the

*personal* qualities of the owner were a material induce-ment to the contract? We cannot see any reason that would make this contract non-assignable which would not equally apply to the ordinary crops of corn, wheat, oats, potatoes, etc. If in such cases a party prefers to deal with one person to the exclusion of assignees, it is very easy to indicate such preference in the contract. Courts will not assume that unusual motives exist.

The learned counsel for the appellant have advanced other considerations, which may be noticed briefly.

The fact that the contract provided in substance that *if* advances should be made by the wine-maker they should bear interest at a certain rate does not indicate that the solvency or credit of the owner of the vineyard was an inducement to the contract; for the making of such advances was entirely optional with the wine-maker.

Nor is there anything in the circumstance that the owner of the vineyard was not *bound* to raise grapes. What the contract secured to him was *the right* to raise grapes of a specified standard, and to compel the defend-ant to take them at a fixed price. This may have been an unwise contract for the defendant to make. But an optional contract upon sufficient consideration is binding. (*Hall* v. *Center*, 40 Cal. 63.) And the mere fact that it is optional cannot be a reason why it should not be assigned.

We have not overlooked the distinction pointed out by counsel between executory contracts and contracts which have been executed on one side. What we have said applies where something remains to be done by the party who assigns.

And, as a matter of course (since a party cannot re-lease himself from an obligation by his own act without the consent of the other party), it is only the benefit of a contract which can be assigned. Where there is a burden, it cannot be transferred without the consent of the other party. (Civ. Code, sec. 1457.)

It may be added that we have examined the English case of *Robson* v. *Drummond,* cited by counsel, but consider it to have been disapproved in the subsequent case of the *British Wagon Co.* v. *Lea,* L. R. 5 Q. B. Div. 149. It is true that *the principle* of the former case was approved in the latter. But it is only the application of the principle which makes the case in point here, and this is what was disapproved in the latter case, which did not turn upon the use of the word "executors," in the contract.

2. The jury included in their verdict the expenses of boxing and shipping the *whole* of the first and second crop of the year in question, while the recovery was restricted by the court to that portion of the grapes which contained twenty-two per cent of saccharine matter. We think that it was error to include in the verdict the expenses of boxing and shipping that portion of the grapes which did not come up to the required standard. The respondent contends in this regard that he ought to have recovered for all the grapes, regardless of the amount of saccharine matter they contained, and that the error was in favor of the appellant. But we do not take that view of the matter. The contract provides that the grapes were not to be gathered until they contained twenty-two per cent of saccharine matter, and as they could not be delivered at the wine-cellar until they were gathered, we think it is to be inferred that the defendant was not to receive them unless they came up to the standard mentioned. Any other construction would bind the defendant to pay the twenty-five dollars per ton for grapes which might not contain any saccharine matter at all.

But the judgment can be modified so as to avoid the consequences of this error. Giving the appellant the benefit of small fractions, the verdict was too large (for the reason mentioned) by $337.57. The respondent, under the order of the court on motion for new trial, remitted $119.70, leaving the verdict still too large by $217.87.

We therefore advise that the judgment be modified, by deducting therefrom the sum of $217.87, and that as modified the judgment and order denying a new trial be affirmed, the appellant to recover his costs of appeal.

VANCLIEF, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is modified, by deducting therefrom the sum of $217.87, and that as modified the judgment and the order denying a new trial are affirmed, the appellant to recover his costs of appeal.

Hearing in Bank denied.