[Civ. No. 14778.   Second Dist., Div. Three.   Dec. 28, 1945.]

HALDOR, INC. (a Corporation) et al., Respondents, v. FORD I. BEEBE, Appellant.

Kaplan & Livingston and Eugene S. Goodwin for Appellant.

Alfred Gitelson for Respondents.

DESMOND, P. J.—The defendant appeals from a judgment in the sum of $4,133 entered against him in a nonjury case for money due upon a contract, reading as follows:

"HALLAM COOLEY AGENCY,
California Bank Bldg.
Beverly Hills, Calif.
Crestview—6161

"Hallam Cooley Agency, Inc.                Date 2/8/35
California Bank Bldg.                       Beverly Hills, Calif.
Beverly Hills, Calif.

"Gentlemen:

"1.   I hereby employ you to render your services to me as my personal representative in the entertainment industry for a period of 5 years and you accept such employment and agree to render your services to me during the term hereof.

"2.   Your duties hereunder are to be as follows: To use all reasonable efforts to procure employment for me; at my request, to advise me with respect to my career and to act in matters concerning my professional interest.

"3.   As compensation for your services I agree to pay you an amount equal to Ten (10%) per cent of all money or other consideration received by me during the term hereof, and thereafter, for so long as I remain employed or receive compensation under or upon engagements and/or agreements entered into or negotiated for during the term hereof, or on extensions or renewals of such agreements or engagements, or

on any engagements or agreements substituted for and/or replacing such prior engagements and/or agreements. Payment shall be due you immediately upon receipt of money or other consideration by me.

"4. I agree that you may render services to other persons. However, I agree not to employ any other person to act for me in the capacity for which I have engaged you.

"5. Should I fail to obtain a bona fide offer of employment from a responsible employer during a period in excess of four (4) consecutive months, during all of which time I am ready, able and willing to accept employment, either party hereto shall have the right to terminate this contract by a notice in writing to such effect sent to the other party by registered mail.

"6. Controversies arising between us under the Private Employment Agency Act, and under the rules and regulations for the enforcement thereof, shall be referred to the Commissioner of Labor, as provided in Section 19 of said Act.

"7. This instrument constitutes the entire agreement between us and no statement, promise or inducement made by any party hereto which is not contained herein shall be binding or valid and this contract may not be enlarged, modified or altered except in writing signed by both the parties hereto.

AGREED TO AND ACCEPTED: (Signed) Ford I. Beebe

NAME

HALLAM COOLEY AGENCY, INC. 749 W. Crescent Hts. Blvd.

ADDRESS<br>OR. 0385

BY: (Signed) S. Geo. Ullman

"This agency is licensed by the Commissioner of Labor of the State of California."

The action was commenced August 6, 1942. The first amended complaint, captioned, "HALDOR, INC., a corporation, (whose corporate name was formerly Hallam Cooley Agency, Inc. and S. George Ullman, a corporation, and prior thereto, Hallam Cooley Agency, Inc., a corporation); HALLAM COOLEY, Plaintiffs, vs. FORD I. BEEBE, Defendant," alleges that on June 30, 1936, the "plaintiff corporation procured for said defendant and said defendant did enter into a limited term agreement of employment as a Director with Universal Productions, Inc."; that approximately four months later and

on or about October 15, 1936, Universal Productions, Inc. entered into another agreement by which the defendant was employed by that corporation as a director, producer and writer; ''That ever since said 15th day of October, 1936, said defendant has been and now is employed under and receiving compensation under the said agreement of October 15th, 1936, entered into during the original term of the agreement . . . and the extensions and renewals of said agreements. That the said Universal Productions, Inc. has exercised each and every of the said thirteen (13) options granted unto it by the terms of the said agreement of October 15th, 1936 and has thereby extended the term of said agreement, each of said options being for a period of six (6) months' extension, so that said agreement will not expire until on or about the 15th day of October, 1943.'' It is further alleged that the defendant on April 22, 1941, notified the plaintiffs that he no longer desired to be represented by them and to discontinue to represent him in the capacity of motion picture agent; that since the last mentioned date he has not paid to the plaintiffs or either of them any sum whatsoever; that the plaintiff, Hallam Cooley, on April 22, 1941, ''was and now is ready, willing and able to perform the services on the part of the agent to be performed'' under the contract of February 8, 1935.

Nothing to the contrary appears in the agreed statement of facts upon which the issues in this case were submitted to the trial court, but in that statement certain additional facts and circumstances attract our special attention. For example, Paragraph I of said statement asserts that the corporation known as ''Hallam Cooley Agency, Inc.'' was chartered on or about February 16, 1934; that on or about September 13th, 1937, its articles of incorporation were amended to show that the name of the corporation was changed to ''Hallam Cooley Agency, Inc. and S. George Ullman''; that thereafter and on or about February 2d, 1942, an amendment to the articles of incorporation of the last mentioned corporation was filed under and by virtue of which the name of the corporation was changed to ''Haldor, Inc.'' This same Paragraph I of the agreed statement recites that the plaintiff corporation, Haldor, Inc., is thereafter referred to as ''Haldor,'' and in Paragraph XVII, ''That plaintiff, Haldor, Inc. joins in the action for the use and benefit of Hallam Cooley.'' Under the theory that ''Haldor'' has been in existence since November 15, 1934, when it was known by a name entirely different,

to wit, Hallam Cooley Agency, Inc., it is declared in the statement that on November 15, 1934, and since then "at all times herein involved and concerned, the plaintiff Hallam Cooley has been and now is the owner and holder of all of the issued and outstanding capital stock of Haldor, Inc., a corporation. That during all of said time, said plaintiff Hallam Cooley was the President of and a Director of said corporation and in control of the policies and acts of said corporation. That the remaining members of the Board of Directors of said corporation at all times herein involved, did act solely during the pleasure of said plaintiff Hallam Cooley and did perform such acts and do such things as were by him directed." One instance of this procedure is noted in Paragraph VI of the agreed statement where it appears "That on or about the 21st day of December, 1937, Haldor, its corporate name then being Hallam Cooley Agency, Inc. and S. George Ullman, did assign unto the co-plaintiff Hallam Cooley, all motion picture agency contracts owned by said Haldor or to which it was a party, including the said agreement, 'Plaintiff's Exhibit 1' [the contract of employment, dated February 8, 1935, quoted at the beginning of this opinion]."

The agreed statement also recites "That defendant had no actual knowledge of the manner in which the capital stock of Haldor, Inc. was issued or held or who constituted its Directors." This last statement is not surprising, since, as we have indicated, the corporate name "Haldor, Inc." did not come into existence, so far as we can determine from the pleadings and the briefs, until almost a year after the defendant had attempted to sever his connection with his employment agency. This he did by means of a notification which, according to the agreed statement, he served "upon Hallam Cooley and Haldor, designated as 'Hallam Cooley Agency, Inc.'." It reads as follows:

"April 22nd, 1941

"Hallam Cooley and
Hallam Cooley Agency, Inc.,
9111 Sunset Blvd.,
Hollywood, California.
"Gentlemen:—

"It has come to my attention that S. George Ullman whom I signed to represent me in February 1936 [1935] for a period of five years, has withdrawn from the firm of Hallam

Cooley Agency Inc. and S. George Ullman. Theodore, [Therefore ?] please be advised that I no longer desire to be represented by you or your agency and this is your notice to discontinue acting in any capacity as my agent.

"I hereby revoke any authority you may have had to collect moneys due me from any source whatsoever and/or to endorse my name to any check and/or deposit same to any account, and shall hold you responsible for any violation of this notice.

Very truly yours,

(Signed) Ford I. Beebe."

Still proceeding under the theory that "Haldor" has been in existence since a date prior to February 8, 1935, the agreed statement declares: "That from February 8th, 1935 to December 21st, 1937, one S. George Ullman was an employee of plaintiff Haldor and was the employee of said Haldor, primarily handling the defendant. That from December 21st 1937 to April 22nd, 1941, the said S. George Ullman continued to handle primarily the defendant. That defendant was induced to execute the said agreement of February 8th, 1935, 'Plaintiff's Exhibit 1' primarily as a result of the negotiations between the said defendant and the said S. George Ullman. That defendant did not have actual notice or knowledge of the said assignment from Haldor unto Hallam Cooley and the entering into of the 'Articles of Co-partnership,' 'Plaintiff's Exhibit 2,' nor the termination by the said Hallam Cooley of the interest of the said Paul W. Wilkins and James Stanley and he, the said Hallam Cooley acquiring their interests, all as provided by Article X of 'Plaintiff's Exhibit 2' and as hereinbefore agreed and said defendant had no actual knowledge thereof. That on or about the 22nd day of April, 1941, the said S. George Ullman and the said Hallam Cooley had dissolved their partnership and that at said time and for the first time told said defendant of the assignment by Haldor unto Hallam Cooley of the said agreement, 'Plaintiff's Exhibit 1,' the entering into of 'Plaintiff's Exhibit 2,' the termination of the interest of the said Paul W. Wilkins and James Stanley and the acquiring of their interests by Hallam Cooley and the termination by Hallam Cooley of the interest of the said S. George Ullman and the acquiring of his interest, all under Article X of 'Plaintiff's Exhibit 2.' That thereupon, the defendant did serve upon plaintiffs Hallam Cooley and said Haldor, the said letter hereinbefore set forth."

Plaintiff's Exhibit 2 mentioned in the foregoing passage is attached to the first amended complaint, entitled "Articles of Co-Partnership," which were signed on April 1, 1938, between Hallam Cooley, S. George Ullman, James Stanley and Paul W. Wilkins, respectively first, second, third and fourth parties. By the terms of this agreement the parties recognized that "Hallam Cooley is the owner of various actors agency contracts, sometimes hereinafter referred to as 'agency contracts,' wherein Hallam Cooley Agency, Inc. and S. George Ullman, a corporation, was named as agent, and which said contracts were by the said Hallam Cooley Agency, Inc. and S. George Ullman, a corporation, heretofore assigned to the said Hallam Cooley." The partnership agreement provided that the party of the first part, namely, Hallam Cooley, would assign to the co-partnership the so-called "agency contracts" and all other contracts which the co-partnership might procure or be a party to for the representation of others, upon the condition that "neither the said party of the second, third, or fourth part shall have any right, title, interest or estate in and to the said 'agency contracts' or 'contracts', the only right and interest of the said parties of the second, third and fourth parts being to share,—and only while a partner, and only as in these articles of co-partnership provided,—in the earnings therefrom. . . ." Article II of the partnership agreement provided "(1) Said partnership shall be conducted and carried on under the partnership name and style of 'Hallam Cooley Agency and S. George Ullman'. (2) The principal place of business of this co-partnership shall be at Number 9111 Sunset Boulevard, County of Los Angeles, State of California, or at such other place as the party of the first part may from time to time designate in writing. . . . (3) The parties hereto do hereby agree that whenever it shall be deemed necessary by the party of the first part, they will execute a certificate of fictitious firm name, and will file and publish the same, all as provided by Chapter II, Division Third, Part IV, Title X, being Sections 2466 to 2472 of the Civil Code of the State of California." Article III provided that "The business of this co-partnership shall be the owning, operating and conducting of a 'theatrical' . . . and 'motion picture' . . . 'radio' and 'amusement' employment agency, and any other business related thereto and deemed to be for the best interests of the co-partnership." Article VI provided that the net profits of

the copartnership should be distributed, under stated conditions, in the following proportions: To Hallam Cooley, fifty per cent; to S. George Ullman, twenty-five per cent; to James Stanley, ten per cent; to Paul Wilkins, ten per cent; five per cent to a "capital account." It is further provided in Article IX that "(1) The party of the first part shall be the Manager of the co-partnership; he shall have full, complete, arbitrary and [un]controlled power and authority to fix and determine the policies and conduct and other operations of the partnership business, to designate the forms of all contracts to which the partnership may be a party, to designate, determine and order the duties of each of the remaining partners hereto. (2) Whenever under these articles of co-partnership any act or decision is provided to be done or determined by a majority of the partners, if a majority cannot agree, or in the event of an equal division of the members of the co-partnership upon any matter, the said party of the first part shall have the right, power and authority to make the final and conclusive decision thereon. (3) The party of the first part, as such Manager, shall have the power and authority to bind the partnership in all business transactions and to sign the name of the partnership to all contracts within the scope of the aforesaid contemplated business of this co-partnership." Article X gives to Hallam Cooley as the party of the first part the right, in the exercise of his "absolute, arbitrary and uncontrolled discretion and opinion," to terminate the interest of any of his copartners in the partnership and also gives him the "exclusive and irrevocable right and option" to purchase such interest.

Summarizing at this point the essential facts disclosed by the pleadings and the agreed statement, it is apparent that a single corporation operating successively under three different names, to wit, "Hallam Cooley Agency, Inc.," "Hallam Cooley Agency, Inc. and S. George Ullman," and "Haldor, Inc.," has existed from 1934 until the date of the agreed statement and that during all that time Hallam Cooley individually has had entire and exclusive control of the contract which the corporation, Hallam Cooley Agency, Inc., made with appellant and of all business relating thereto. This control he was in position to exercise either by means of the corporation, owned at all times solely by him, or by the unusual partnership which, by its articles, expressly provided that none of his three partners should have any right, title,

interest or estate in or to the contracts which he might assign to the firm, although they might take their share of what those contracts should earn. The ironbound provisions of that agreement secured for Cooley the same complete control of the Beebe contract that he possessed as the sole stockholder of the corporation which signed the agreement of February 8, 1935, and which the corporation later assigned to him as an individual.

■ By that contract, as we have seen, the agency was bound to use all reasonable efforts to secure employment for appellant, to advise him, on his request, with respect to his career and to act for him in matters concerning his professional interest. On the ground that these are services personal in their nature, appellant claims that the contract providing for them could not be validly assigned without his consent, and that the violation of this rule justified his cancellation of April 22, 1941, and relieved him of any further liability under the contract. If this contract of employment had been made with a person possessed of some special skill, art, or knowledge, the benefit of which appellant desired to secure and that person, without the consent of appellant, had transferred the contract with full control thereof to a third person, we could see the strength of appellant's position under the authorities which he cites, but we are not considering here that kind of a contract and cannot accept his view. In this case the agreement was made with a corporation which, in the nature of things, cannot perform personal functions.

We think, therefore, that it is fair to say that under the circumstances it must have been in contemplation of the parties when the contract was signed that the services bargained for would be rendered by a human representative delegated to perform that duty by the corporation and subject to being succeeded, if occasion should arise, by one with proper qualifications. In this case no such occasion did arise however. The contract itself did not specify any individual who should be so delegated but it appears from the agreed statement that S. George Ullman was the one who acted for the corporation in connection with the Beebe contract until his partnership with Cooley in sharing profits was dissolved more than a year after the five-year contract of February 8, 1935, had expired. Furthermore, it does not appear that appellant was in any way aggrieved by the technical assignments which were

made. Actually there was no change in the ownership of the contract; it remained always with Hallam Cooley.

In this connection we are impressed with the obser- vations of the court in *Model Baking Co.* v. *Dittman* (Tex. Civ. App.), 266 S.W. 802. In that case the defendant Ditt- man had contracted with a partnership known as Model Bak- ing Co. to build an oven according to specifications peculiarly his own and as part of his contract had guaranteed the oven for a period of five years against defect of any kind and agreed to repair the same free of cost to the firm. The part- nership consisted of two brothers, one of whom held exclusive management and control, although the net profits of the busi- ness were distributed one-fourth to his brother, the remaining three-fourths to him. After the inactive partner had retired, assigning his interest in the business to the active partner, and after the oven had fallen to pieces because of defective construction, Dittman endeavored to escape liability on his contract upon the ground that it was of a personal nature in- volving personal trust and confidence and was, therefore, not assignable. The language of the court seems appropriate to the present situation (p. 803) : ''We do not think the rule against assignment of personal service contracts contemplates, or should be extended to include, merely nominal owners or officials of the parties bound, or employees who have no power or control over the business, or voice in its management. And where such contracts are made and afterwards assigned, if the assignment does not change the ownership, or control, or management, but leaves them in precisely the same hands they were in prior to the assignment, the other party should not be permitted to defeat the purposes of the pact and escape his solemn obligations simply because a technical, but inef- fectual, assignment has been made. Technically, the contract was assigned, but practically it was not. Technically, the new concern was a distinct legal entity from the old, but to all practical intents and purposes it was the same concern. There was no actual substitution of parties. . . .''

While the Texas court held that the contract before it, calling for service personal in its nature, was not terminated by a non-effectual assignment, the instant case relates to a contract with a corporation which, as we have said, cannot, as such, render personal service. We feel, therefore, that, *a fortiori,* the reasoning of the cited case as to technical as- signments applies.

A well-considered opinion distinguishing between contracts which, because of their nature are assignable or nonassignable, may be found in *La Rue* v. *Groezinger*, 84 Cal. 281 [24 P. 42, 18 Am.St.Rep. 179], cited by both appellant and respondent.

■ Appellant contends that "by reason of the wrongful assignments of his agency contract, as well as respondents' failure to comply with the license requirements of Sections 1581 and 1595 of the Labor Code, he was justified in discharging respondents." His point in regard to license requirements is, in our opinion, not well taken in view of the recitals upon the subject in the agreed statement and the reports attached thereto issued by the California Department of Industrial Relations. From those documents it appears that in each year succeeding 1935 until April 1, 1941, licenses were issued in each instance "on request for renewal." The first of these licenses were issued to the corporation known as "Hallam Cooley Agency Inc.," then in 1937 to the corporation known as "Hallam Cooley Agency Inc. and S. G[eorge Ullman]." In the following years licenses were issued annually until 1941 to a partnership known as "Hallam Cooley Agency," or "Hallam Cooley Agency and S. George Ullman" doing business as a partnership, in each instance the names of the partners being shown individually. On April 22d, 1941, permission was granted by the department "to transfer interest of S. George Ullman to Hallam Cooley doing business as Hallam Cooley Agency." Thereafter until 1943 the annual licenses were issued to "Hallam Cooley Agency (Individual)." With the exception of the early period during which the licenses were issued to the corporation they were all issued to individuals (including Hallam Cooley) doing business as a partnership, until the last few years, during which the license was issued to Hallam Cooley.

The judgment is affirmed.

Wood, J., concurred.

SHINN, J.—I concur in the foregoing opinion, but deem it advisable to point out that the defense to the action lacks merit for a reason other than the one stated in the opinion. The amount of the judgment represented plaintiff's percentage of defendant's earnings under his contract with Uni-

versal, which, as extended under the options, ran for seven years and terminated October 15, 1943. So far as can be determined from the statement of facts, there was no occasion for plaintiff to render any services in connection with that contract subsequent to the date of its execution. If defendant's compensation came to him from Universal under the original contract and as the result of services which had been fully performed by plaintiff, as would appear to be the case, the latter was entitled to the agreed percentage and defendant could not, by terminating the contract, escape liability for commissions which plaintiff had already earned.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1946.