## WETHERELL BROS. CO. v. UNITED STATES STEEL CO.

### No. 4676.

United States Court of Appeals
First Circuit.

Dec. 26, 1952.

Rehearing Denied Jan. 9, 1953.

Stuart DeBard, Boston, Mass. (Loomis Patrick, Boston, Mass., on brief), for appellant.

Charles C. Cabot, Boston, Mass. (Thaddeus R. Beal, and Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a final judgment entered by the United States District Court for the District of Massachusetts on May 15, 1952, dismissing the complaint in a contract action brought by an alleged sales agent against its alleged manufacturer principal.

Plaintiff, Wetherell Bros. Co., is a Pennsylvania corporation. Defendant, United States Steel Company was substituted for the original defendant, American Steel and Wire Company of New Jersey, by stipulation of the parties, after American had been absorbed into United States Steel Company. Both American and United

States Steel are New Jersey corporations. Jurisdiction rests on diversity of citizenship. 28 U.S.C. § 1332.

Plaintiff seeks to recover under a sales agency contract which it had purchased from Wetherell Bros. Company a Massachusetts corporation, and in the alternative to recover for the value of services performed by plaintiff for the defendant.

On May 1, 1923, the Morris & Bailey Division, Oliver Iron and Steel Corporation, entered into a written contract with Wetherell Brothers Company, a Massachusetts corporation (hereinafter referred to as Wetherell-Massachusetts), by which the latter was appointed exclusive sales agent for certain steel products in the New England states for the former on a basis of commissions of 5% of orders placed in the territory. Wetherell-Massachusetts agreed to "use its best endeavors to secure business" and to cover the territory thoroughly.

On June 2, 1930, American purchased the business of the Morris & Bailey Division and on June 7, 1930, American negotiated a contract with Wetherell-Massachusetts by which it was agreed that American would' assume all of the obligations of the Morris & Bailey Division imposed upon it by the contract of May 1, 1923, and the terms of that contract were confirmed between the new parties except that the provision in the original contract that either party could terminate upon six months' notice was changed to two years.

Wetherell-Massachusetts continued to be the only outside sales representative of the defendant in New England until March 1, 1950. On January 16, 1950, American, in conformity with the provisions of the contract, notified Wetherell-Massachusetts that the contract between them would terminate on January 16, 1952.

On March 1, 1950, Wetherell-Massachusetts liquidated and distributed all of its assets to its three stockholders. Shortly thereafter Wetherell-Massachusetts was dissolved as a corporation. On the same day, March 1, 1950, the stockholders of Wetherell-Massachusetts sold to Penn. Sea-Board Iron Company, a Pennsylvania corporation, all of the assets which they had received from Wetherell-Massachusetts excepting cash and receivables. Included in this sale was an attempted assignment of its contract with the defendant. Thereupon Penn. Seaboard Iron Company changed its name to Wetherell Bros. Co. and Wetherell-Massachusetts changed its name to Wetherell Company. This procedure of liquidation followed by sale of the distributed assets was motivated by tax considerations.

Neither the plaintiff nor Wetherell-Massachusetts, nor any representative of either of them, ever informed the defendant of the purported assignment of the contract. The contract is silent in regard to assignment.

On or about April 5, 1950, the defendant learned from outside sources that Wetherell-Massachusetts had liquidated. The defendant, on April 18, 1950, wrote to Wetherell-Massachusetts notifying it that the agreements of May 1, 1923, and June 7, 1930, were terminated as of March 1, 1950. In the meantime, between March 1 and April 18, 1950, orders had been submitted to the defendant from "Wetherell Bros. Co." which the defendant reasonably believed had been obtained by Wetherell-Massachusetts, but which in fact had been obtained by the plaintiff. On May 4 and May 8, 1950, the defendant returned the orders to the plaintiff and refused to fill them. Thereafter all but two or three of the orders which had been returned by the defendant were resubmitted to it directly by the customers.

The plaintiff claims damages for breach of contract in the sum of about two hundred thousand dollars, representing commissions allegedly earned on the returned orders, plus loss of profits for the unexpired period of the contract from April 18, 1950 to January 16, 1952. In the alternative, plaintiff claims that it is entitled to the fair value of the services rendered to defendant in obtaining the orders submitted between March 1, 1950 and April 18, 1950.

The court below held that the Pennsylvania corporation could not be substituted for the Massachusetts corporation as the New England sales agent of the defendant manufacturer without the defendant's consent, or, in other words, that the agency

contract was not assignable. It also held that under the market conditions then prevalent, the plaintiff had not performed any services for the defendant with regard to steel orders in New England, and that even if plaintiff had benefited defendant, it had acted as a volunteer in doing so. Thus, the court denied the plaintiff's claims in express or implied contract and in quasi-contract.

Appellant contends in substance that this decision was erroneous because: (1) this particular sales agency contract between a manufacturer and a corporate agent was assignable by the agent to a successor corporation and (2) the plaintiff had rendered valuable services to defendant and had not acted officiously, and thus was entitled to recover for such services rendered in good faith. Appellant further contends that upon reversal, this court can compute damages and order judgment to issue for plaintiff.

■ This contract appears to have been made in New York with performance in Massachusetts contemplated. In this diversity case we must look to the rule of conflicts in Massachusetts in order to determine the law governing assignability. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Despite some uncertainty on the choice of law for contracts, which has been generated by Massachusetts decisions like Old Dominion Copper Mining & Smelting Co. v. Bigelow, 1909, 203 Mass. 159, 89 N.E. 193, 40 L.R.A.,N.S., 314, nevertheless we think that Massachusetts applies the rule embodied in §§ 332, 346 of the Restatement, Conflict of Laws, stating that the place of contracting governs the nature and validity of an obligation. Thomas G. Jewett, Jr., Inc., v. Keystone Driller Co., 1933, 282 Mass. 469, 185 N.E. 369, 87 A.L.R. 1298; Carver-Beaver Yarn Co. v. Wolfson, 1924, 249 Mass. 257, 143 N.E. 919; John B. Frey Co. v. S. Silk, Inc., 1923, 245 Mass. 534, 140 N.E. 259; see Wilde v. Wilde, 1911, 209 Mass. 205, 95 N.E. 295; Polson v. Stewart, 1897, 167 Mass. 211, 45 N.E. 737, 36 L.R.A. 771.

However, although it seems to us that Massachusetts would apply the rule of New York, counsel for both parties agree that the law of both states is identical concerning the assignability of such a contract as we have here.

■ We agree with the court below that the exclusive sales agency contract in this case presupposed a reliance upon the agent by the principal which rendered impossible the delegation of the agent's duties which was attempted. IV Corbin, Contracts (1951) § 865; II Williston, Contracts (1936), §§ 411, 411A. We think this agency was a relationship of particular trust and confidence within the scope of the decision in New York Bank Note Co. v. Hamilton Bank Note E. & P. Co., 1905, 180 N.Y. 280, 73 N.E. 48, although that case is distinguishable. There the duty delegated was to collect money and pay it over to the principal, whereas here the duty delegated is to use "best endeavors" in promoting the sale of steel in the New England area.

In Canister Co. v. National Can Corporation, D.C.1947, 71 F.Supp. 45, it was held that New York determines the assignability of a contract according to whether or not the duty is to be performed personally by the assignor, and under this test, a contract with a corporation does not imply a relationship of particular trust and confidence or a performance by the corporation which should be called personal, unless the obligation is such that performance by only one particular corporation is contemplated. New York does seem to support free assignment, and, as indicated in the Canister opinion, one corporation may be as competent to perform as another corporation, "especially when we are dealing * * * with two 'impersonal', large corporations." 71 F.Supp. 45, 48.

However, we believe that the assignment attempted in this case between two corporations of different states stands on a different footing from an assignment between two corporations of the same state. The record does not indicate that the corporate powers of the plaintiff-assignee Pennsylvania corporation are the same as those of the assignor Massachusetts corporation. Neither does the record show that the plaintiff is qualified to do business in Massachusetts.

Appellant cites two cases, Haldor, Inc., v. Beebe, 1945, 72 Cal.App.2d 357, 164 P.2d 568 and Continental Collieries v. Shober,

3 Cir., 1942, 130 F.2d 631, in order to avoid the general rule stated by Williston and Corbin, supra, forbidding the delegation of exclusive sales agency duties. The Shober case is not in point, but the Beebe case, while it is not governing, suggests that an agency contract with a corporation does not contemplate "personal" performance. This seems to be in accord with the spirit of New York cases upholding assignment, like Rosenthal Paper Co. v. National Folding Box & Paper Co., 1919, 226 N.Y. 313, 123 N.E. 766. But in New York Bank Note Co. v. Hamilton Bank Note E. & P. Co., 73 N.E. 48, 52, the court said:

"* * * The plaintiff was not only technically but substantially a different entity from its predecessor. It is true that in dealing with corporations a party cannot rely on what may be termed the human equation in the company. The personnel of the stockholders and officers of the company may entirely change. But though there is no personal or human equation in the management of a corporation, there is a legal equation which may be of the utmost importance to parties contracting with it. In dealing with natural persons in matters of trust and confidence, personal character is or may be a dominate factor. In similar transactions with a corporation, a substitute for personal character is the charter rights of the corporation, the limits placed on its power, especially to incur debt, the statutory liability of its officers and stockholders. These are matters of great importance when, as at present, many states and territories seem to have entered into the keenest competition in granting charters; each seeking to outbid the other by offering to directors and stockholders the greatest immunity from liability at the lowest cash price. * * *"

The Massachusetts court has said substantially the same in Brighton Packing Co. v. Butchers' Slaughtering & Melting Association, 1912, 211 Mass. 398, 97 N.E. 780, 782:

"* * * These are two distinct corporations, created by the laws of two different states. The powers of each corporation are limited and controlled by the statutes of the state which created it, and it is scarcely conceivable that the statutes of the two states are the same or that the franchises and powers of the two corporations are identical. But if this were so, it would remain true that they are the creation of two different governments, the offspring of different parents, and not only distinct legal entities, but having separate and distinct existences. They could and did make contracts with each other; they might bring suits against each other. They are in no respect the same person. This is the basis of our decision in New York Bank Note Co. v. Kidder Press Mfg. Co., 192 Mass. 391, 78 N.E. 463, * * *."

These decisions seem determinative of the instant case, and neither the contract itself nor the conduct of the parties operating under it indicate otherwise. The facts that defendant had already served its notice to terminate the contract in two years when this assignment was attempted and that conditions of a seller's market prevailed at the time of assignment and thereafter, do not alter the defendant's right to insist upon performance by a Massachusetts corporation. The defendant has so insisted by refusing to recognize the substitution of a Pennsylvania corporation as its New England agent and the defendant was within its rights in considering the contract terminated by the liquidation of the Massachusetts corporation and the sale of the agency.

We also agree with the court below that plaintiff is not entitled to recover on a theory of quasi-contract for two reasons. First, because no benefit was conferred on defendant under the prevalent conditions of a seller's market. Second, because the defendant acted officiously or as a volunteer, in forwarding the steel orders without disclosing its true identity or the fact of the purported assignment. Restatement, Restitution (1937) § 2.

The judgment of the District Court is affirmed.