**ARNOLD PRODUCTIONS, INC.,**
Plaintiff-Appellant,

v.

**FAVORITE FILMS CORPORATION, and**
**Nationwide Television Corporation,**
Defendants-Appellees.

No. 10, Docket 25995.

United States Court of Appeals
Second Circuit.

Argued Sept. 28, 1961.

Decided Feb. 6, 1962.

See also 291 F.2d 94.

Samuel Gottlieb, New York City (Harry Giesow, Gainsburg, Gottlieb, Levitan & Cole, New York City, on the brief), for plaintiff-appellant.

Harold J. Sherman, New York City (Fitelson & Mayers, New York City, on the brief), for defendant-appellee Favorite Films Corp.

Winfield E. Aronberg, New York City, for defendant-appellee Nationwide Television Corp.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

Arnold Productions, Inc., the owner of two motion pictures, "Hangmen Also Die" and "It Happened Tomorrow," on May 27, 1947 entered into a distribution agreement with Favorite Films Corp., which granted Favorite "the sole and exclusive right to reproduce, lease, license, sub-license, exhibit, rent, distribute and exploit [the films] * * * for reissue purposes, for a period of seven (7) years," and similar rights for the same period "to lease, license, sub-license, rent, distribute and exploit [the films] * * * through and by television." In return Favorite agreed "to use its best efforts diligently and in good faith to exploit the said photoplays and to obtain as wide a distribution thereof and as many exhibitions and bookings thereof as possible."

It was further provided that "This agreement is personal and cannot be assigned by the Licensee voluntarily, by operation of law or otherwise, without the consent in writing of the Licensor first obtained." Favorite was to retain 62½ percent of the receipts from the exploitation of the films, and Arnold was to receive the remainder.

On March 14, 1949, Favorite entered into an agreement with Nationwide Television Corp., co-defendant in this action, constituting Nationwide its "sole and exclusive agent for the television distribution of the films" on terms substantially the same as those of the Arnold-Favorite contract. Nationwide, in turn, orally subleased the television distribution rights to its wholly-owned subsidiary, Film Equities Corp., which was subsequently succeeded by another subsidiary of Nationwide called Unity, Inc. These subsidiaries handled the actual distribution of the films and accounted directly to Favorite, retaining 25 percent of all proceeds.[1]

This is a diversity action brought by Arnold, a Delaware corporation, against Favorite and Nationwide, both New York corporations; New York law applies. Arnold claims that Nationwide was guilty of fraud against it, and that Favorite broke the contract in failing to use its "best efforts" in television distribution and in delegating the television distribution to Nationwide; it also seeks an accounting from Favorite. No question is raised of Favorite's performance of that part of the contract covering the reissue of the films for theatre showings. Judge Murphy, in his opinion reported at 176 F.Supp. 862, granted judgment for Nationwide and for Favorite, except to the extent of requiring Favorite to account for its receipts from the licensing of the two films since the date of the last financial report to Arnold in 1955. We affirm the judgment.

Arnold's only claim against Nationwide appears to be that it conspired with Favorite to defraud Arnold by withholding records relating to the licensing of the films and refusing to return the films on receipt of Arnold's notice of termination of the contract. We agree with Judge Murphy that there was no evidence whatsoever suggesting any fraudulent intent on Nationwide's part.

■ Arnold's first claim against Favorite is that it committed a breach of the "best efforts" clause in that the methods of distribution used were not the most remunerative possible. It claims that its revenues would have been greater had the films been marketed individually rather than as parts of packages also including less desirable films owned by others. We see no reason to upset Judge Murphy's finding of fact that there was no proof that individual promotion would have been more profitable or his alternative finding that in any event the claimed injury was not shown with sufficient definiteness to permit any calculation of damages, cf. Broadway Photoplay Co. v. World Film Corp., 225 N.Y. 104, 121 N.E. 756 (1919).

■ Second, Arnold argues that it was error for the court below to limit the accounting it required of Favorite to those proceeds received from the exploitation of the films since it had last rendered Arnold an account. Arnold claims that Favorite should be compelled to account to it for all receipts from the films during the entire period of their contractual relationship. We see no reason to impose such a requirement. Indeed, we see no justification for even the limited accounting granted by the court below. "Even though an accounting were required to ascertain the amount of damages, that fact would be insufficient to support a claim for equitable relief unless a fiduciary relationship were shown * * *." Terner v. Glickstein & Terner, Inc., 283 N.Y. 299, 28 N.E.2d 846 (1940). The relationship between Arnold and Favorite was one of simple contract. Arnold could, by means of familiar dis-

---

1. Since Nationwide, Film Equities and Unity all had common ownership and common personnel, we shall treat them as one entity, as did the court below.

covery devices, obtain any information in the hands of Favorite or others it needed to establish its allegations as to damages. Because there is no objection by Favorite, however, we do not disturb the allowance below of a limited accounting.

Arnold's third assignment of error, and that with which we are here primarily concerned, is that Favorite violated the contract by delegating its performance to Nationwide rather than handling the distribution itself as agreed. We find no error in Judge Murphy's holding that Favorite did not assign the contract to Nationwide or abandon its duties under it, and thus committed no breach.

■ It is clear that Favorite did not technically "assign" its contract in its entirety, but merely delegated a part (the extent of which we shall presently discuss) of its duties. Favorite did not purport to divest itself of its ultimate responsibility to Arnold. Although it made Nationwide its "sole and exclusive agent," it maintained certain supervisory powers over it. It reserved "the right to designate * * * a Representative, to whom you agree to submit for approval or rejection, each and all of your proposed license or sub-license agreements with respect to the Photoplays," and it appointed its president as such representative. Thus there was no breach of the specific covenant against assignment. Rather the question is whether the delegation of performance deprived Arnold of any right to Favorite's own services which it may have acquired explicitly from the provision that "this agreement is personal" or implicitly from the "best efforts" clause and the inherent nature of the contract.[2]

■ We do not find it necessary to consider whether New York would impose the same implied duty of personal service upon a contracting corporation as it would on an individual under the same circumstances, or whether this contract by its explicit terms gave Arnold the right to demand Favorite's own services.[3] Even if we assume that only Favorite was to give the performance called for by the contract, which was the "exploitation" of the films and the "obtaining" of bookings, we do not believe that this performance excluded such use of Nationwide's services as Favorite made. The contract must be interpreted in light of what the record reveals about the practices of the business in which the parties were engaged, and especially what it reveals about the general understanding and course of dealings between them.

■ It is significant that under this contract Favorite's duties with respect to reissue of the two films to theatres were exactly the same as the television distribution duties here in question. There is no dispute that it was understood that little if any of the actual theatre distribution (possibly that in New York City, at the most) was to be done by Favorite itself; most was to be delegated to various "franchise holders" in various parts of the country, who were to do the actual work of selling films to local exhibitors. There is no indication that Favorite's supervision over these franchise holders was any greater than

---

2. "In a contract for a sales agency, the personal performance of the agent is practically always a condition precedent to the duty of the principal and employer," and the agent cannot discharge his obligation by furnishing a substitute. 4 Corbin, Contracts 444–45 (1951); see, Paige v. Faure, 229 N.Y. 114, 127 N.E. 898, 10 A.L.R. 649 (1920); cf. Nassau Hotel Co. v. Barnett & Barse Corp., 162 App.Div. 381, 147 N.Y.S. 283 (1st Dept. 1914), aff'd mem., 212 N.Y. 568, 106 N.E. 1036 (1914). Plaintiff has made no claim that Favorite's duty should be determined by principles of actual agency, and we see no reason to treat the duty as more than contractual.

3. There is some reason to believe that the New York courts would not permit such an implication in the case of a corporation. Wetherell Bros. v. United States Steel Co., 200 F.2d 761 (1 Cir. 1953); New York Bank Note Co. v. Hamilton Bank Note Engraving & Printing Co., 180 N.Y. 280, 293, 73 N.E. 48, 52 (1905); New England Iron Co. v. Gilbert Elevated Ry. Co., 91 N.Y. 153, 166–167 (1883).

its supervision over Nationwide's television distribution. Favorite maintained the right to reject any agreements suggested by Nationwide, and there was sufficient evidence that on occasion its president actually did so with respect to television distribution to justify Judge Murphy's finding that there was no abdication of responsibility. There is no suggestion that Arnold was endangered by lack of financial responsibility on Nationwide's part, or in any other way not having to do with the quality of the performance it received. In any event, the concession that under the same contract distribution through franchise holders was contemplated is sufficient to foreclose any inference that Favorite's employees were expected to do all television distribution personally. There is, indeed, testimony which would support a finding that throughout most of the term of the contract Arnold acquiesced in Favorite's delegation of sales duties.

Affirmed.