**GEORGE HANTSCHO COMPANY, Inc.,**
**Plaintiff,**

**v.**

**MIEHLE–GOSS–DEXTER, INCORPORATED, Defendant.**

United States District Court
S. D. New York.
July 19, 1963.

Kissam & Halpin, New York City, for plaintiff; Robert W. Murray and Donald P. McCormick, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendant; Charles H. Tuttle, Colby Stilson, John R. Brook and Stephen R. Lang, New York City, of counsel.

PALMIERI, District Judge.

This is a motion by defendant for a separate trial, Fed.R.Civ.P. 42(b), of its affirmative defense that the agreement upon which plaintiff bases its cause of action, at least as interpreted by plaintiff, is illegal under the antitrust laws, and for a stay of all other proceedings pending such trial.[1] Questions of

1. The substance of this affirmative defense is repeated as a counterclaim for a declaratory judgment, with respect to which defendant moves for a speedy and immediate hearing, Fed.R.Civ.P. 57. The issues raised on that motion are identical to the issues under the Rule 42(b) motion.

discovery and inspection, Fed.R.Civ.P. 34, are also presented for resolution.

Under date of April 12, 1960, the parties entered into a contract denominated "License Agreement." The agreement recited that defendant was engaged in the design, manufacture, and sale of certain presses and allied products in the graphic arts industry, and was desirous of manufacturing and selling certain web offset presses manufactured by plaintiff.[2] Plaintiff granted to defendant an exclusive license within the United States and its possessions, Canada, Mexico, Puerto Rico, and Cuba, to make, sell or lease six specified sizes of web presses for a term of ten years. Plaintiff agreed not to accept further orders for the specified presses after the execution of the agreement, to transfer to defendant drawings and equipment, and to furnish competent supervision to assist in the manufacture of the presses.[3] The agreement also contained a personal covenant by the president of plaintiff not to compete with defendant in the United States with respect to the specified presses, and a provision whereby plaintiff would refrain from selling or licensing its presses in Europe until July of 1961 to allow the parties to effect satisfactory arrangements to extend the license to the manufacture and sale of the presses by defendant on that continent.[4]

The gravamen of plaintiff's action is that defendant has breached this agreement by soliciting orders for and constructing web offset presses in England through its wholly-owned English subsidiary, Miehle-Goss-Dexter, Ltd.[4A] Such construction is purportedly based on the confidential information and trade secrets of plaintiff, that plaintiff contends were given to defendant solely for use in the geographic areas and for the purposes specified in the license agreement. Defendant has admitted that its subsidiary has constructed and offered for sale web offset presses in England, but avers that such presses are of a size and design different from any of those specified in the agreement.

The substantive proposition that defendant urges upon the Court in support of its motion under Rule 42(b) is that if the agreement of April 12, 1960 prohibits it from selling web presses in England, then the agreement is illegal per se under the Sherman Act as a division of markets between competitors, and thus unenforceable by plaintiff.[5] To present this issue for determination, argues defendant, would be relatively simple. It need only demonstrate that the parties

2. According to plaintiff's complaint, the distinguishing characteristic of a web offset press is that it:

    prints on a continuous ribbon of paper, called the web, which unwinds from a roll, passes on a horizontal plane between pairs of lithographic printing cylinders, and then through other parts of the press to a device which folds and cuts it into printed sections.

3. The presses manufactured by defendant are to be sold under defendant's name, but with a nameplate indicating that such presses were designed by plaintiff.

4. In its complaint, plaintiff alleges that the parties negotiated for a supplemental agreement pursuant to this provision, but that such negotiations were terminated by defendant and have not been resumed. Defendant's answer admits that it sought to obtain an enlargement of the areas in which it could manufacture and sell the presses, and that it terminated these negotiations.

4A. See Arnold Productions, Inc. v. Favorite Films Corp., 176 F.Supp. 862, 864 (S.D.N.Y.1959), aff'd, 298 F.2d 540 (2d Cir., 1962); Madison Pictures, Inc. v. Pictorial Films, 6 Misc.2d 302, 151 N.Y.S. 2d 95 (Sup.Ct.1956).

5. See, in these respects, United States v. Timken Roller Bearing Co., 83 F.Supp. 284 (N.D.Ohio, 1949), modified on other grounds, 341 U.S. 593, 71 S.Ct. 971, 95 L. Ed. 1199 (1951); Baldwin-Lima Hamilton Corp. v. Tatnall Measuring Systems Co., 169 F.Supp. 1, 29 (E.D.Pa.1958), aff'd 268 F.2d 395 (3d Cir.), cert. denied, 361 U.S. 894, 80 S.Ct. 190, 4 L.Ed. 2d 451 (1959); White Motor Co. v. United States, 372 U.S. 253, 259, 83 S. Ct. 696, 9 L.Ed.2d 738 (1963).

are engaged in interstate and foreign commerce, a point plaintiff could hardly dispute, and that the parties are competitors in the manufacture and sale of presses, a fact defendant avows to be the case.[6] Defendant foresees that the other aspects of the suit will be numerous and complex, will involve extensive discovery and trial time, and can perhaps be aborted by resolution of the antitrust issue, which can be effectively prepared and tried in a short period of time.[7] Defendant also asserts that the antitrust issue is not interrelated with the other issues in the case.

■■■ These contentions are not accepted, and it is the conclusion of the Court that it should not exercise its discretion to award defendant a separate trial on the antitrust issue.[8] Antitrust defenses to actions based on contract are not favored by the courts.[9] Thus, even if the challenged provisions did partake of illegality in an antitrust proceeding brought by the Government, their effect in an action between private parties for breach of contract and a confidential relationship would not necessarily be to deny plaintiff any or all of the relief it seeks. Moreover, to state, as defendant does, that an agreement between competitors to divide markets is illegal per se,[10] is only the first step in the antitrust analysis. On the papers before the Court it is not at all clear that no substantial issues exist with respect to whether the parties were competitors within the meaning of the per se rule,[11] whether the exclusionary provisions were intended to be ancillary to a valid disclosure of confidential information, whether such restrictions, if ancillary, were reasonable, and other questions of a similar nature.[12]

The above discussion is not intended to intimate any view as to the merits of the defense. It is merely to demonstrate that there is scant probability that the antitrust issue is susceptible of speedy and easy resolution divorced from the many other facets of the nature and character of the parties, their business, and the relationship between them. Accordingly, a separate trial on this issue would not advance the orderly disposition of this litigation, and the motions for such a trial, for a speedy hearing with respect to defendant's antitrust counterclaim, and for a stay, are denied.[13]

■ With respect to plaintiff's motion for discovery and inspection, defendant raises various objections, the most substantial of which are that much of the material sought is in the possession of its subsidiary, and hence not subject to its custody and control; that certain of the documents relate to its secret processes; and that plaintiff is only entitled to discovery as to the six sizes

---

6. The web press manufactured by plaintiff is not the subject of a patent.

7. Compare 28 U.S.C. § 1292(b) (criteria for interlocutory appeal from orders not otherwise appealable).

8. See 5 Moore, Federal Practice ¶ 42.03, at 1211 (2d ed. 1951).

9. Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); Note, The Defense of Anti-Trust Illegality in Contract Actions, 27 U.Chi.L.Rev. 758 (1960).

10. White Motor Co. v. United States, supra note 5, 372 U.S. at 259, 83 S.Ct. at 700, 9 L.Ed.2d 738.

11. Compare United States v. Penn-Olin Chemical Co., 217 F.Supp. 110 (D.Del. 1963).

12. See White Motor Co. v. United States, supra; United States v. Addyston Pipe & Steel Co., 85 F. 271 (6th Cir., 1898), aff'd, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899); Handler Antitrust in Perspective 41–48 (1957).

13. In view of this disposition, it is unnecessary to pass on plaintiff's contentions that an adverse determination on the antitrust decision would not abort its cause of action, and that the Court would have no jurisdiction to decide the merits of the antitrust claim until it had been determined that defendant had breached the agreement.

of web presses referred to in the agreement of April 12, 1960. None of the objections raised by defendant is sufficient to cause this Court to deny the relief plaintiff seeks.[14] Accordingly, plaintiff's motion under Rule 34 is granted.

Submit order on notice.

14. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Clark, 9 F.R.D. 263, 265 (D.D.C.1949); 4 Moore, Federal Practice ¶ 34:17, at 2471–72 (2d ed. 1962); Note, Developments in the Law—Discovery, 74 Harv. L.Rev. 940, 1016 (1961).