Theodore B. Kupeermah, J.
This motion, brought on by order to show cause directing the defendant to make available a feature motion picture entitled “ Dirty Dingus McGee ” and enjoining exhibition at any other theatre in the New York Metropolitan area other than at Loew’s State Theatre No. 1, is denied.
Plaintiff is part of the Loew’s theatre chain, although it is a separate and distinct corporation. Prior to the decision in United States v. Paramount Pictures (334 U. S. 131), Loew’s Incorporated and the defendant Metro-Goldwyn-Mayer, Inc. (hereinafter MGM or Metro) were part of the same organization. Metro pictures were shown first in Loew’s theatres (70 F. Supp. 53, 68), finding No. 120.
When the United States Government required that Loew’s Incorporated divorce exhibition from production and distribution, the Loew’s State Theatre, the flagship theatre in New York in the Loew’s chain, and the rest of the theatres in the Loew’s chain, had to negotiate for pictures separately. Thereafter the Loew’s State Theatre became two theatres, of which Loew’s State No. 1 is here involved.
The plaintiff brings this action for Loew’s State Theatre No. 1 against Metro with respect to a Frank Sinatra film entitled “ Dirty Dingus McGee.”
By Metro form contract dated August 6, 1970 and countersigned by Metro September 1, 1970, it was agreed that this film would be exhibited at the theatre ‘‘ no earlier than November 11, no later than November 18, 1970.” Defendant in a letter declared its anticipatory breach and refusal to deliver the film as called for in the contract. This film is licensed for exhibition pursuant to copyright. (Fortnightly Corp. v. United Artists, 392 U. S. 390, rehearing den. 393 U. S. 902.) An unauthorized showing would be a copyright infringement. (See Nimmer, Copyright, The right to exhibit motion pictures, § 109.4.)
The Metro form contract contains a clause on the back in infinitesimal small print. (See Putzer v. Vic-Tanny-Flatbush, 20 A D 2d 821.) Parenthetically, for the plaintiff to contend that it had no knowledge of the contents of the small print would, in view of the expertise of its vice president Bernard Myerson, whose affidavit is before the court, be ludicrous.
*27 Paragraph'8 of the agreement reads as follows: “ default : If Exhibitor violates any of the provisions of this agreement or becomes insolvent or is adjudicated bankrupt or executes an assignment for the benefit of creditors or a receiver is appointed for any of Exhibitor’s property or if Exhibitor violates any of the provisions of any other exhibition contract(s) heretofore or hereafter made with Distributor, then, in any of said events, Distributor may if Exhibitor does not cure, correct or remedy the said causes for termination within 14 days after the happening of such event, terminate this contract and all other contracts with Exhibitor or suspend delivery of the pictures licensed hereunder (and of pictures under any or all such contracts).”
Defendant contends that plaintiff’s failure with respect to previous films like “ Kelly’s Heroes ”, which was pulled from the Loew’s showcase theatres after nine days when it was agreed to run two weeks and “ Moon Shine War ” which was not run in August as agreed, and its anticipatory breach of an alleged oral agreement to follow “ Dirty Dingus McGee ” after the Loew’s State No. 1 showing, during Christmas week at Loew’s showcase theatres, brings it within this paragraph for the purpose of refusing to deliver the Sinatra film.
As to “ Kelly’s Heroes ” and “ Moon Shine War ” any failure or breach occurred before the date of the instant contract, and so the defendant entered into it with knowledge thereof. As to the alleged oral agreement with respect to the Christmas showcase run, this was subject to the contingency that the Sinatra film not1 ‘ bomb, ’ ’ clearly a contingency difficult of ascertainment in advance and of fulfillment.
Loew’s neighborhood showcase theatres have booked “ Catch 22 ” for the Christmas week, so it is no longer possible for it to complete this alleged oral agreement. Further, Metro, because of the plaintiff’s alleged breaches has booked “Dirty Dingus McGee ” into the red carpet showcase theatres for five weeks, starting November 11, and now claims it cannot deliver the film to the plaintiff under the agreement here in question.
With respect to the alleged oral agreement, plaintiff relies on paragraph 14 of the small print as follows:
‘ ‘ THIS CONTRACT IS COMPLETE AND NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE BY EITHER PARTY TO THE OTHER EXCEPT AS SET FORTH HEREIN. ’5
In this industry, as the legendary Samuel Goldwyn is reputed to have stated ‘ ‘ the signing of a written agreement is the commencement of negotiations.”
The defendant is clearly in an anticipatory breach of its contract in refusing to deliver the film for Loew’s State Theatre *28 No. 1. Aside from the clear factual situation, it could not have conditioned the agreement for ‘ ‘ Dirty Dingus McG-ee ’ ’ at that theatre upon a subsequent Christmas showcase theatres arrangement. (See United States v. Paramount Pictures, 334 U. S. 131, supra.)
However, preliminary injunctions should issue sparingly, and furthermore, in this case, its issuance would be the whole relief requested in the complaint. (All American Brush Corp. v. Clairol, Inc., 30 A D 2d 523.) In addition to a clear legal right there must also be a showing of irreparable damage. (De Candido v. Young Stars, 10 A D 2d 922.)
Defendant shows that many other films are available to the plaintiff, and, further, that .defendant has already made other arrangements at red carpet showcase theatres for the film and time period involved. There may be some difficulty proving damages (Arnold Prods. v. Favorite Films Corp., 298 F. 2d 540; Brooklyn Majestic Theatre Co. v. Vitagraph Co. of Amer., 233 N. Y. 682.) As Judge Cardozo said in Broadway Photoplay Co. v. World Film Corp. (225 N. Y. 104, 109): “ The indifferent show succeeds by force of the reputation of the actor. The results have all the endless variety of human tastes and fashions. ’ ’
However, “ Dirty Dingus McGfee,” so aptly named for this litigation, gives no indication either in the moving papers or otherwise of inspiring paeans of praise and may be considered unique only in that it consummated the divorce of Loew’s and MGfM.