**MOORE–McCORMACK LINES, INCORPORATED, as Owner of the SS ROBIN HOOD, Plaintiff,**

v.

**UNITED STATES of America, as Time Charterer of said SS ROBIN HOOD, Defendant and Third-Party Plaintiff,**

v.

**STATES MARINE CORPORATION OF DELAWARE, Third-Party Defendant.**

**No. 67–Civ. 1982.**

United States District Court,
S. D. New York.

July 15, 1971.

Hyde, Dickerson & Reilly, New York City, for plaintiff; by W. Shelby Coates, Jr., New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., Louis E. Greco, Atty. in Charge, Admiralty & Shipping Section, U. S. Dept. of Justice, New York City, for the United States; by Louis E. Greco, New York City, and Michael J. Pangia, U. S. Dept. of Justice, New York City, of counsel.

CROAKE, District Judge.

## MEMORANDUM

This action, brought under 46 U.S.C. §§ 741–752, asserts a claim for damages allegedly incurred through the negligence of the defendant. Three parties are involved; the United States ("the Government"), States Marine Corporation of Delaware ("States Marine"), and Moore-McCormack Lines, Inc. ("Moore").

The controversy arises out of damage to a vessel, SS ROBIN HOOD, owned by Moore and time chartered by States Marine, which used it at least in part in fulfilling Contract No. MST–61 ("the MST contract"), a contract of affreightment between States Marine and the Military Sea Transportation Service, a Governmental agency.

The Government has now moved for judgment of dismissal on the pleadings, pursuant to Rule 12(c), F.R.Civ.P. In so far as its motion includes reference to information and admissions obtained through pre-trial investigation, the motion will be treated as one for summary judgment, also pursuant to Rule 12(c).

From May 22 to May 29, 1965, while the relevant contracts were in force, the SS ROBIN HOOD lay at anchor at Inchon, Korea, discharging both governmental and nongovernmental, commercial cargo. Plaintiff alleges that damage in the amount of $57,729.00 was caused to the vessel through the negligence of the Government in unloading its cargo. The Government, on the other hand, claims that the damage was incurred during the commercial operations. In the alternative, it demands indemnity from any liability from States Marine.

In any event, all parties agree that the Government was not notified of the alleged damage before the ship left Korea. At issue is the significance of this omission.

The Government's contention is that the requirement of notice is a valid limitation of negligence liability, and that in the present circumstances breach of this contractual duty prevents recovery in tort. The contractual language upon which the Government relies is found in Article 5, Paragraph (g) of the amendment to the contract:

"(g)   .   .   .   The Government shall not be liable for the repair of any damage under this Article 5(g) unless written notice specifying such damage and the name(s) of the party or parties causing such damage shall have been given to the Government or its authorized representative, as soon as possible after the occurrence of

such damage, or in any event before the vessel leaves the berth or anchorage where the damage occurred . . ."

Moore, on the other hand, claims that it is not bound by the contract, to which it was not a signatory. Alternatively, it construes the above-quoted language as preventing equitable action for specific performance (repair by the Government) but not an action such as the present, which only seeks damages. And in any event, Moore challenges the validity of the clause in question as violative of public policy.

Three theories have been asserted as justification for finding Moore to be bound by the above-quoted language. The first is that the time charter contained language either effectively duplicating the notice requirement of the MST contract, or incorporating it by reference. The second is consent to be bound by the MST notice terms. The third is a theory of assignment and delegation.

With regard to the first and second theories, the extent of Moore's duty to give notice is governed by the relevant notice provision in a Rider incorporated into the time charter:

"31. Charterers are not to be responsible for stevedore or other damage to the vessel unless notified in writing by the Master at the time of occurrence of damage; Master is to co-operate with Charterers and Agents in giving prompt notice of claim in writing to party causing such damage."

■ This ambiguous clause is legally insufficient to incorporate any provision of the MST contract by reference. The MST contract is neither named nor described nor, for that matter, referred to at all. Lowry & Co. v. SS Le Moyne D'Iberville, 253 F.Supp. 396, 398–399 (S.D.N.Y.1966); Colonial Sugars Co. v. SS Polly, 70 Civ. 1226 (S.D.N.Y. December 31, 1970, Croake, J.).

On the present record, it is also impossible to infer an agreement by Moore to be bound by the MST notice requirements from the above-quoted provision. Whatever the intent of this clause might be in other particulars, for present purposes all it obligated the Master (presumably Moore's servant) to do was to cooperate with States Marine, the Charterer, in giving prompt written notice of damage.

"Promptness," within the contemplation of the above-quoted clause, would have to depend upon the circumstances surrounding each incident in which damage was caused. It clearly cannot be held as a matter of law that "prompt" equals "before the vessel leaves the berth or anchorage . . .," to quote the MST contract. Kravat v. Indemnity Ins. Co., 152 F.2d 336, 338 (6th Cir. 1945). Specific deadlines, and penalties for failure to observe them, are nowhere listed or referred to in the time charter itself. Therefore, no contract can be found in the time charter obligating Moore to observe the notice deadline in the MST contract.

A third possible basis for responsibility by Moore to give the specified form of notice would be the direct obligation of an assignee of a bilateral contract as the delegee of duties to be performed originally by the assignor. See Arnold Products, Inc. v. Favorite Films Corp., 298 F.2d 540, 543 (2d Cir. 1962); Imperial Refining Co. v. Kanotex Refining Co., 29 F.2d 193, 199 (8th Cir. 1928); 3 Williston on Contracts, 3d Ed., §§ 411, 411A, 418.

■ However, the record, which is rather rudimentary in this regard, would indicate that Moore's status was that of an independent lessor of a vessel, not that of an assignee. In the absence of a written contract assigning rights and delegating duties, the implication of such an assignment contract would require proof of facts not apparent from the present record. See Arnold Products, Inc., supra; Langel v. Betts, 250 N.Y. 159, 164 N.E. 890 (1928); Williston, §§ 418A, 424. At this juncture, the time charter, a comprehensive doc-

ument prepared by experts, must be regarded as the sole statement of Moore's responsibilities. And as has been noted, no affirmative obligation to provide the notice envisaged by the MST contract can be found within the four corners of the time charter and its amendments and rider (attached to the moving papers as Exhibit N).

This conclusion obviates the necessity for determination at this time of the actual effect of the MST clause upon a claim for damage, and if the effect be to preclude such a claim, whether the clause is void as violative of public policy. Issues raised by the claim for in-demnity, including the effect on States Marine's position of the notice clause in the MST contract, are not presented by the present motion.

Similarly, the fact issue of whether or not Moore gave "prompt notice of claim in writing," as required by its own contract, is not now before this court. Neither is the question of what the consequences to this action would be from the establishment of such a breach, as regards either States Marine or the Government, as beneficiary of this contract.

Accordingly, the motion by the United States, defendant, is denied.

So ordered.